NATIONAL CASH REGISTER CO. v. GROBET et al.

(Circuit Court, S. D. New York. September 26, 1906.)

PATENTS—INFRINGEMENT—RECONSTRUCTION OF PATENTED MACHINE.

Complainant manufactured and sold without restriction two styles of patented cash registers, numbered, respectively, 78 and 79. The two were alike, except that No. 79 contained an additional printing device, which, in combination with the other parts, was covered by a separate patent. Defendants, who were repairers of cash registers and dealers in second-hand machines, becoming the owners of one of each style of machine, removed from the No. 79 the printing device, which was its distinctive feature, and attached it to the No. 78, without the addition of any new parts, making in effect a No. 79 machine. *Held*, that such action was not an infringement of the patent covering such printing attachment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 397.]

In Equity. On motion for preliminary injunction.

Kerr, Page & Cooper and Mr. Hayward, for complainant.
Samuel O. Edmonds, for defendant.

HOUGH, District Judge. The complainant is the owner of patent No. 483,511, issued on September 27, 1902, to one Cook, and covering "a printing attachment" for cash registers and indicators intended to print "both detached checks and a permanent·record." Apparently before, and certainly since, Cook's invention cash registers have been put on the market by the complainant, producing, when properly actuated, a check bearing printed details of the transaction in respect of which information is wanted. Preservation of the checks produces a business record. Cook's invention secures successive impressions of the type, one upon the check, which on receiving its legend is ejected from the machine, and a second impression on a continuous roll of paper, which, by the same force that causes the printing upon it, is made to unwind before the type, and after receiving the imprint previously given to the check is rewound upon a cylinder, from which it may be at any time removed, thus giving to the owner of the machine a list or record of every check emitted therefrom, and therefore of every transaction had, since the next previous removal of the record roll. The machine which produces only checks is covered by various patents other than Cook's, and that which also keeps the "permanent record" of checks produced is covered by the same patents, and by Cook's patent also. The style of register which does not embody Cook's patent is designated by the complainant as its "No. 78," while that which does contain Cook's patented machinery is known as "No. 79," and sells for a considerably higher price. This suit is based on Cook's patent, and in the usual form alleges an infringement thereof by the defendants, in respect of which a preliminary injunction is asked.

It is obvious that the No. 79 machine performs every function that does the No. 78; but gives in addition the permanent record, and gives this added product solely by the added machinery of Cook's invention. The defendants are expert machinists, who repair cash registers and other intricate machinery, and are also dealers in second-hand registers. They aver that, having an old No. 79 machine lawfully in their posses-

148 F.—25

sion, they detached therefrom Cook's patented device, and affixed the same to an old No. 78 machine, also lawfully in their possession, thereby producing what may be fairly described as a "second-hand No. 79." This allegation is substantially admitted by the complainant's counsel, who declares "that the defendants have added to the old 78 machine the precise invention, no more, no less, that is stated in the patent in suit," and who does not deny that the machinery was taken by the defendants from something once duly and unreservedly sold by the complainant. The view hereinafter taken of this matter renders it unnecessary to consider any point raised in argument, other than the question whether the above admitted facts constitute infringement. It will therefore be assumed (but not decided) that the patent in suit is valid, and that the complainant is neither guilty of laches nor debarred from enforcing its rights herein by any want of equity in itself.

In Morrin v. Robt. White Engineering Works (C. C.) 138 Fed. 81, the learned court endeavored to digest the law as set forth in the reported cases regarding the repair, reconstruction, or change of patented articles unreservedly sold by the patentee. It is there said that the "attempted generalization" was "probably imperfect," and, in the sense that human foresight cannot foretell what human ingenuity will devise, I find that to be the case; for exactly as presented, this cause must be regarded as one of first impression. It is obvious that the defendants' acts have deprived the complainant of profits, by prolonging the useful life of Cook's patented product, and delaying the sale of a new No. 79 machine; and it is equally obvious that the defendants, unless scrupulously regardful of a patentee's rights, must be frequently tempted to the apparently easy act of making a few new wheels or cams, to render more successful the transfer of the patented adjuncts from a No. 79 to a No. 78. But this case is left with the court, without any doubt cast upon the defendants' assertion that in making the change complained of "no parts" were used manufactured "by any other concern save the National Cash Register Company." Taking, therefore, the above statement as true, it seems to me clear that the defendants have neither repaired, reconstructed, nor replaced any patented article, nor any material part of such article.

The test of lawful repairing is that the "identity of the machine" must be retained (Gottfried v. Brewing Co. [C. C.] 8 Fed. 322), provided that in executing such repairs a separately patented part be not replaced by one not made under the authority of the patentee (Singer Mfg. Co. v. Springfield Foundry Co. [C. C.] 34 Fed. 395), and when the machine is "practically worn out" repair cannot extend to reconstruction—the owner must "cast it aside and buy a new one from the patentee." Shickle, etc., Co. v. St. Louis, etc., Co., 77 Fed. 739, 23 C. C. A. 433. These are, I think, illustrative cases, and the defendants' acts are not obnoxious to their doctrine. National Phono. Co. v. Fletcher (C. C.) 117 Fed. 149, presented a procedure as new when brought to the court's attention as these defendants' operations seem to me. In that case the defendant claimed:

"The right to gather up all the complainant's output, recast the same, subtract what he will, add his own parts, good or bad, and put it afloat again as

the patented product simply because he used some of the original parts, each in itself unchanged."

The court there found that this might destroy the merit of the patented article, in substituting something of the defendant's, and therefore enjoined the practice. Here, however, these defendants have added no parts of their own, have used only the defendants' products, and are not obnoxious to the charge of substituting anything for the complainant's genuine article; for, indeed, the only difference between the machine complained of and any similar machine in complainant's factory is that the former was not assembled by the complainant's workmen.

The real and only question here presented is whether the complainant as a consequence or part of its rights as patentee is solely entitled to put together the "printing attachment" of Cook and the other patented contrivances common to the No. 78 and No. 79 machines, and solely to vend the resultant combination. It is not denied that the owner of a patented article freed from the lawful monopoly by an unrestricted sale may "improve [the same] as he pleases in the same manner as if dealing with property of any other kind." Chaffee v. Belting Co., 22 How. 217, 16 L. Ed. 240. Nor that one licensed to use the whole of a machine "does not become an infringer because he uses a part only." Young v. Foerster (C. C.) 37 Fed. 202. The sale or use of a duly patented element, in combination with an unpatented, unpatentable, or otherwise free element, is permissible. Morgan Envelope Co. v. Albany Paper Co., 152 U. S., at page 433, 14 Sup. Ct. 627, 38 L. Ed. 500; George Frost Co. v. Kora Co. (C. C.) 136 Fed. 487 (affirmed 140 Fed. 987, 71 C. C. A. 19). Applying these considerations to the case in hand, I see no difference between what the defendants have done and what they might have done had complainant separately sold all the new parts requisite to the composition of No. 79 machines, at prices which enabled competent machinists to assemble them at a profit. If they continue to conduct this business honestly, their field is limited, but in this instance they absolutely owned enough of complainant's output, without adding anything of theirs but mechanical skill, to produce a machine which as much belonged to them as did the component parts constituting it.

I am not unmindful that the completed machine became the property of one Kessler, but in legal intendment the machine was the defendants while they performed the acts complained of. It is quite true, as urged at the argument, that some of the language in the Cotton Tie Case (106 U. S. 89, 1 Sup. Ct. 52, 27 L. Ed. 79) may be taken as limiting the right of any person to use again a patented article when the original construction as designed by the patentee has come to an end. But that case, as explained in Morgan Envelope Co. v. Albany Paper Co., supra, must be understood to rest entirely upon the effect given to the limited license under which patented cotton ties were sold. I do not think it applicable here. These defendants have changed the style number on the machine to which they have added their specimen of Cook's invention, by covering the figures "78" in the case front with a metal plate bearing the figures "79." Of course, this

machine is not complainant's style "79." If they have the exclusive right to the use of that number as applied to cash registers, such right does not rest on the patent law. •Its use by defendants may be unfair competition, but it is not infringement. Geo. Frost Co. v. Kora Co., supra.

The application for preliminary injunction is denied.