**IDEAL WRAPPING MACH. CO. v. GEORGE CLOSE CO.**

District Court, D. Massachusetts. January 23, 1928.

No. 2154.

1. **Patents ⊚⟞⟞191—Owner of patent has right to exclude others from use of invention, but other rights in product are governed by general property law.**

Owner of patent has right to exclude others from use of his invention, but all other rights in property produced by it are governed by general property law.

2. **Patents ⊚⟞⟞191—Patented machine when sold is freed from control of patent law.**

Owner of patent, who sells patented machine, thereby frees it from control of the patent law, and results of sale depend upon general law of contracts.

3. **Patents ⊚⟞⟞255—Right of buyer to "repair" patented machine does not extend to changing its identity; "reconstruction" being forbidden.**

Rights of buyer of patented machine are limited to use and repair thereof, without right to rebuild or reconstruct machine, and legal limit of "repair" is passed and realm of "reconstruction" invaded if repairs are so extensive that identity of machine is lost.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reconstruct—Reconstruction; Repair—Repairs.]

4. **Patents ⊚⟞⟞255—Prohibition on purchaser's change of identity of patented machine does not depend upon purchaser's intention in ordering change.**

Limitation on right of purchaser of patented machine to effect reconstruction changing machine's identity applies, regardless of whether change is due to wearing of machine or desire on purchaser's part for a different machine; purchaser's intention being immaterial.

5. **Patents ⊚⟞⟞328—1,082,331, 1,082,463, for candy wrapping machine, held infringed by reconstruction of machines by purchaser for purpose of wrapping different size of candy; "improve."**

Letters patent Nos. 1,082,331, 1,082,463, for candy wrapping machine, *held* infringed by purchaser of patented machines by reconstruction thereof for purpose of wrapping different size of candy from that which could be wrapped when in original condition, since change did not involve mere repair or improvement but changed purpose and identity of machines; "improve" meaning to change so as to better perform the purpose originally intended, not to change to another purpose.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Improve.]

6. **Patents ⊚⟞⟞255—Sale of patented machine for wrapping caramels of specified size carried no implied agreement that machine could be reconstructed so as to wrap different sized candy.**

Where patented candy wrapping machine was sold under agreement that it would wrap

caramels of specified size at rate of 200 a minute there was no implied agreement on part of owner of patent that machine could be used to produce product of different size, so as to permit reconstruction of machine without infringing patent.

**7. Patents ⬡191—Patent law gives owner of patent right to exclude use of patented article with right to lift exclusion.**

Patent law gives right to exclude use of patented articles, and carries with it right to lift that exclusion at sole discretion of owner of patent.

**8. Trade-marks and Trade-names and unfair competition ⬡68(6)—Sale of patented candy wrapping machines carried no implied promise that seller would refrain from use of machines in competition with buyer.**

Sale of patented candy wrapping machines by owner of patent did not carry with it implied promise that seller would not engage in making candy by use of machine in competition with buyer.

**9. Trade-marks and trade-names and unfair competition ⬡68(6)—Fact that patent owner selling patented candy wrapping machines engaged in wrapping candy in competition with buyer held not to render seller guilty of unfair competition.**

In suit for infringement of patent by reconstruction by buyer of candy wrapping machines, fact that seller owning patent reserved for its own use, or for use of company which it controlled, candy wrapping machines making and wrapping caramels of different sizes, which machines it used in competition with buyer, did not make it guilty of unfair competition.

In Equity. Patent infringement suit by the Ideal Wrapping Machine Company against the George Close Company. Decree for complainant.

Geo. K. Woodworth, of Boston, Mass., and Charles W. Hills, of Chicago, Ill., for plaintiff.

Everett S. Emery, Frederick L. Emery, and Emery, Booth, Janney & Varney, all of Boston, Mass., for defendant.

LOWELL, District Judge. This was a bill in equity for the infringement of letters patent No. 1,082,331 and No. 1,082,463, both issued on December 23, 1913, to Archibald E. Hopkins and Olin S. Fellows, for a candy wrapping machine, and assigned to the complainant. The respondent does not contest their validity, nor does it deny that what it did would under ordinary circumstances have been an infringement. Its contention is that under the circumstances of the present case its actions were legal.

The letters patent sued on cover a machine for wrapping small cubes of candy, especially caramels. The machine was so successful as to become practically a neces-

sity; it being uncontradicted that by the use of it 200 caramels could be wrapped in a minute, which was more than double the output of any prior machine. The machine need not be described in detail. Its two main parts are the cutter table and the wrapping wheel. The cutter table is a circular disc equipped with knives at fixed intervals, which is revolved horizontally by step-by-step mechanism. A continuous stream of candy is fed onto this table, and as it revolves the candy is cut into the specified lengths. When it has made a complete revolution the severed pieces of candy are pushed off the table and then are engaged by the wrapping wheel. This wrapping wheel is also a disc, but it revolves in a vertical plane. It is provided with pockets which receive the severed pieces of candy, and, in the course of its revolution, wraps them. The length of the piece of candy is determined by the distance separating the knives on the cutter table, and the pockets in the wrapping wheel must be of a specific size to accommodate the separate pieces of candy delivered from the cutting table. Owing to the fact that a larger piece of candy requires the knives to be set further apart, it will be seen that with the larger size piece fewer knives can be accommodated on a disc of the same diameter. The step-by-step mechanism will also have to be changed to make it operate properly, and the pockets in the wrapping wheel must be of a different size. The machine therefore has to suffer a considerable reconstruction in order to make it operate to wrap a caramel of a size different from that for which it was intended.

The respondent owned seven machines, five of which it bought from the complainant, and two it bought secondhand from the first purchasers thereof. Five of these machines —the two secondhand ones and three of the others—were changed over to wrap a different size of candy.

The size of candy which the respondent first made was 1x1x⅜ to ¾, and all the machines which it bought from the complainant were designed to wrap candy of this size. On each of the machines there was a plate bearing on it, among other things, a statement of the size of the candy for which the machine was adapted. There was a written agreement connected with two of the sales by the complainant, but not with the other three. This agreement guaranteed that the machine would wrap pieces of candy 1x1x⅜ to ¾ at the rate of 200 per minute.

After the respondent had been selling candy for some years, it found that the mar-

ket for its size of candy was seriously interfered with by a piece of candy 1¼x1x⅜, which was manufactured by the Ideal Caramel Company. The respondent applied to the complainant to change over its machines into ones adapted to wrap a piece of candy of that same size. This the complainant refused to do, and thereupon the respondent had the work done by a machinist.

The evidence as to the formation of the Ideal Caramel Company was that about the year 1920 two of the officers of the complainant bought a controlling interest in the stock of the candy company, which proceeded to make and wrap caramels 1¼x1x⅜; these two officers and some of the stockholders of the complainant owned a large number of shares in the new company, but there were other shareholders.

Two questions are raised in this case, which may be thus stated: The complainant contends that the respondent is guilty of infringement. The respondent makes two replies to this contention. In the first place, it says that it had the right to make over its machines in order to enable them to wrap candy of a different size; and, in the second place, that the complainant was guilty of unfair competition in engaging in the business of wrapping candy.

The respondent's contention is that the purchaser of a patented machine may change it in order to make it accomplish a different result, provided that the changed machine contains only the invention for which he has once paid tribute. This precise question has arisen only once before, in the case of Tabulating Machine Co. v. Durand, Official Gazette, vol. 156, p. 258, 38 Washington Law Reporter, p. 552, which was discovered by the respondent's counsel.

[1] The owner of a patent has the right to exclude others from the use of the invention. Terrell, Patents (7th Ed.) p. 7; Patent Pools in Relation to Patent Law, H. C. Workman, American Bar Ass'n Journal for October, 1927, p. 585; Bloomer v. McQuewan, 14 How. 539, 14 L. Ed. 532; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122; United Shoe Machinery Corporation v. United States, 258 U. S. 451, 463, 42 S. Ct. 363, 66 L. Ed. 708.

This is the only right secured to him by the letters patent; all his other rights are dependent on the general law, and are the same as those of any owner of property. Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U. S. 502, 37 S. Ct. 416, 61 L.

Ed. 871, L. R. A. 1917E, 1187; Ann. Cas. 1918A, 959.

[2] When the owner of a patent sells a patented machine, he thereby frees it from the control of the patent law; the results which flow from the sale are dependent on the law of contracts. A great body of law relating to patented articles has grown up, which, although called patent law, is in reality not patent law, but general law, especially law relating to contracts. This is true of the cases dealing with licenses. The vendor of a patented machine has been said to have licensed the use of the machine. This is merely another way of stating that the machine is no longer subject to the monopoly created by letters patent.

[3] The rights of the buyer of a patented machine have been settled by a long line of cases. Walker, Patents (5th Ed.) § 302a. He may use it until it wears out, and may repair it also; he may not, however, rebuild, or, as it is usually called, "reconstruct," the machine. Difficulties arise in determining the legal limits between repair and reconstruction. The test is whether the identity of the machine is preserved by the repairs. If they are so extensive that the result is a new machine, the legal limit has been passed, and the forbidden realm of reconstruction has been invaded. Walker, Patents (5th Ed.) § 302a; 1 Hopkins, Patents, p. 336; Terrell, Patents (7th Ed.) p. 163; Goodyear Shoe Machinery Co. v. Jackson (C. C. A.) 112 F. 146, 55 L. R. A. 692.

[4] The respondent says that the test of identity is not a sound one to apply to the case at bar, because it was laid down in cases where a machine required extensive repair because of being worn by use. This criticism is unfounded. The patentee has no interest in the reason for the change, whether it be due to a wearing-out of the machine or to a desire on the purchaser's part for a different machine. The prohibition applies to the change itself, not to the state of the purchaser's mind in ordering the change.

[5] If we test the case at bar by the criterion of identity, we shall find that the machines lost their identity and became different machines, as they were so reconstructed as to be capable of wrapping an entirely different size of candy from that which could be wrapped by them when in their original condition.

The respondent builds on the case of Chaffee v. Boston Belting Co., 22 How. 217, 16 L. Ed. 240, as the foundation of its legal rights, but it has unduly extended the scope of a sentence of the opinion of Mr. Justice

Clifford in that case. The respondent cites the Chaffee Case, and then says:

"The opinions on patent law written by Mr. Justice Clifford are considered the highest authority. In formulating, as he did, the principle we are here dealing with, he noted that, in using the patented machine which had been lawfully purchased, the purchaser had a right to *improve upon it*, without being liable under the patent laws, clearly meaning that, so far as concerned the patents under which the machine was sold, the purchaser might change the structure of his machine as he pleased in order to make it more useful to him."

This statement of the effect of Mr. Justice Clifford's opinion is unwarranted, as we shall see when we consider the case of National Cash Register Co. v. Grobet (C. C.) 148 F. 385, before Judge Hough, and the same case on appeal, National Cash Register Co. v. Grobet (C. C. A.) 153 F. 905, before Judges Wallace, Lacombe, and Townsend. In this case the company manufactured two kinds of patented cash registers, known as No. 78 and No. 79, which were similar, except that No. 79 had an additional printing device which enabled the user to keep a permanent record. The defendant, who was rightfully in possession of parts of both machines, added the additional printing device from the No. 79 machine to the No. 78 machine, and thereby produced what was practically a No. 79 machine. Judge Hough in the lower court held that he did not infringe, and cited the case of Chaffee v. Boston Belting Co., to the point that the purchaser of a patented machine may improve it. In the Court of Appeals Judge Hough's opinion was overruled. Judge Townsend, in delivering the opinion, said, at page 907:

"When these defendants, therefore, supplied said attachment and added it to said No. 78 machine, and thereby converted it into a No. 79 machine by uniting to it the patented attachment which made up the complete combination of No. 79, they infringed said right of manufacture of the patented combination, with which complainant had not parted by the sale of a No. 78 machine."

It may further be said that, as pointed out by the complainant, "improve" does not mean change to another purpose, but change so as to better perform the purpose originally intended.

The respondent in this case relies especially on the Tabulating Machine Case in the Supreme Court of the District of Columbia, referred to above, which resembles in its facts the case at bar, but Judge Barnard, who gave the opinion in that case, says:

"The changes that have been made, or that are contemplated, according to the showing in this case do not in my judgment destroy the identity of the machines."

In other words, in the opinion of the learned judge, the case before him was one of repairs and not of reconstruction.

The respondent relies also on the case of Thomson-Houston Co. v. Kelsey Co. (C. C. A.) 75 F. 1005, in which the purchaser of a patented trolley was allowed to change the old trolley stand for a lower one which enabled the car to go under a new low bridge. The court held that, unlike the present case, the trolley stand was not a principal part of the invention, and that to prevent its change would unduly extend the complainant's monopoly.

[6] The respondent contends that under the special circumstances of this case an agreement was implied in the sales of the machines that they might be used to produce a product of any size. The evidence, however, does not support this contention. The agreement was that the machine would wrap caramels of the specified size at the rate of 200 a minute. That was all that the complainant warranted that the machine would do. The construction of the machine was such that both parties had in mind the use of the machine in the only way in which it could be used—to wrap pieces of caramel 1x1x⅜ to ¾. At that time the respondent had no intention of selling a wrapped caramel of a larger size, and the complainant had no intention of manufacturing wrapped caramels of any size. The only thing in the contemplation of either of them was the production of wrapped caramels of the specified size.

[7] The patent law itself gives the right to exclude, and carries with it, necessarily, the right to lift that exclusion from anybody at the sole discretion of the owner of the patent. United States v. United Shoe Machinery Co., 247 U. S. 32, 58, 38 S. Ct. 473, 62 L. Ed. 968. It is perfectly legal for him to sell a patented machine to A to-day, to B to-morrow, and then refuse to sell any more machines to either A or B. In construing the effect of an agreement for sale of a patented machine, there is no reason to look at it in any different light from the sale of any other article. If I buy a .32 caliber revolver in a store, I have no right to, complain because it cannot be used with a .38 caliber bullet. There is no implied representation that such a thing can be done. The same is true in the present case. There was no implied

representation that any other size of wrapped caramel could be made on the machine, and, as in the case of the revolver, there could not be, because it was impossible. In the supposed case there was no representation that the purchaser might come back to the store and change the revolver for one of a different size; and in this case there is no such representation.

[8, 9] If the complainant had not become a candy manufacturer, the case would end here. But the defendant further alleges that the complainant was guilty of unfair competition. If we assume, as contended by the respondent, that the Ideal Caramel Company was practically the same as the Ideal Wrapping Machine Company, under another name, there was nothing inequitable in its making candy in competition with the respondent. The sale of the machines did not carry with it an implied promise not to do so. The Ideal Wrapping Machine Company adopted no unfair methods. It merely reserved for itself the use of machines which produced wrapped caramels of the size 1¼x1x⅜. This it could legally do.

Decree for complainants.