Max K. KUTHER, an individual, Plaintiff,

v.

Alfred LEUSCHNER, an individual, doing business under the name and style of Al's Machine Shop, Defendant.

Max K. KUTHER, an individual, Plaintiff,

v.

WILBUR–ELLIS COMPANY, a corporation, Defendant.

Civ. Nos. 38418, 38859.

United States District Court
N. D. California, S. D.

July 6, 1961.

Mellin, Hanscom & Hursh, by Oscar A. Mellin, San Francisco, Cal., for plaintiff.

Naylor & Neal, by Frank Neal, San Francisco, Cal., for defendants.

SWEIGERT, District Judge.

The above two cases, consolidated for the purpose of trial, involve similar subject matter and issues, namely, whether the defendants have infringed a valid patent of plaintiff in a fish canning machine. (Letters Patent, No. 2,452,666 issued November 2, 1948).

It is alleged that the defendants procured a number of the patented machines from an unlicensed holder and proceeded without authority, to cause them to be entirely rebuilt and to adapt them to fill five ounce cans, whereas they were built to fill one pound cans only.

The defendants admit that they have caused the reconditioning of four of the machines to so adapt them but deny that they have in so doing infringed the patent.

The specific changes made by the defendants in converting the machines are admitted and enumerated in the deposition of defendant Leuschner who made the conversion for defendant Wilbur Ellis. Six essential parts of the patented combination were changed to accommodate the machines for the smaller size cans.

*Conversion of the Machines*

Thus, the question is presented whether it is infringement for the pos-

sessor of a patented combination, designed to pack one pound cans only, to so change essential parts that the machine will pack five ounce cans only.

In George Close Co. v. Ideal Wrapping Machine Co., 29 F.2d 533 (1st Cir. 1928), the Court, affirming the District Court, 23 F.2d 848 (D.Mass.1928), held that it was infringement for a defendant to convert patented caramel wrapping machines, designed to wrap caramels of a specific size, to wrap larger caramels, pointing out that such a reconstruction involving extensive change of essential parts, destroys the identity of the machine and results in a new, different machine, namely, a machine capable of wrapping an entirely different candy size.

In Miller Hatcheries, Inc. v. Buckeye Incubator Co., 41 F.2d 619 (8th Cir. 1930), the Court held that it was infringement for a defendant to convert a patented egg incubator, designed to accommodate nine trays, to accommodate twelve trays, saying that such a reconstruction, involving extensive changes in essential parts, destroys the identity of the machine and results in a different machine of greatly increased capacity but embodying all the elements of the original patent.

In The Tabulating Machine Co. v. Durand, Sup.Ct.D.C.1910; 156 Official Gazette, the Court held that it was not infringement to change a patented automatic card sorting machine by a one inch widening of the machine to enable it to handle larger cards, the Court saying that the change did not destroy the identity of the machine and that invention does not reside in the size of the machine alone but in its principle of novelty.

This Tabulating Machine case was noticed by the Court in the Ideal Wrapping Machine case (District Court decision, supra), but distinguished upon the ground that no showing had been made in the Tabulating case that the identity of the machine had been destroyed and, that the case was, therefore, one of repair and not of reconstruction.

Defendants in the pending cases concede that the Ideal Wrapping Machine and Miller Hatcheries cases, supra, favor plaintiffs' contention but contend that the recent case of Aro Manufacturing Co. v. Convertible Top Replacement Company, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed 2d 592, decided February 27, 1961, in effect overrules those cases by "delimiting impermissible reconstruction to those situations where there is a 'second creation' of the patented entity" and by holding that there can be no infringement where the replacement involves only some of the essential, but unpatented parts, and results in something less than a remaking of the patented entity.

In Aro, which involved the replacing of the worn out canvas top of a convertible automobile so that the patented combination of top and hardware was restored to its original condition, the Court held that the replacement of the worn out essential part was permissible restoration of the article to the original use for which it was purchased. The Court did not say or hold that change of essential parts to give a different size or different use would be permissible reconstruction, nor was any such question presented.

Defendants argue, however, that if, as held in Aro, it is permissible to replace individually unpatented elements of an overall patented combination with identical elements, it should also be permissible to change the size, kind or location of the parts to vary the capacity or purpose.

Such reconstruction, defendants argue, pertains only to size and use and does not result in a remaking of the patented entity.

We do not agree with this interpretation of the rule declared in Aro. When the change of essential parts is designed to change and in fact does change the capacity or effectiveness of the patented entity, the result is not only a new, but a different article, embodying the unique patented combination, but not made by the patentee to whom, alone, is reserved the right to make articles embodying the patented combination, in such amounts,

in such sizes and for such purposes as he decides—or not to manufacture any articles at all, if he so chooses. (See George Close v. Ideal, supra, 29 F.2d at 537.)

When the patentee decides to manufacture and sell the patented combination so built as to handle material of a given size, he impliedly chooses to refrain, as is his right, from manufacturing them to handle other sizes or for other purposes.

If the possessor is permitted, without liability for infringement, to so change essential unpatented parts of the combination as to enable it to handle material of different sizes, it follows that he could sell the article as changed and introduce into the public domain new, different machines, embodying the patented combination, despite the patentee's election not to build the combination for such sizes or purposes.

Such a reconstruction is clearly different, from repair or replacement by the possessor of worn out parts to preserve the article in the condition in which it was manufactured and sold by the patentee.

In Leeds & Catlin Co. v. Victor Talking Mach. Co., 213 U.S. 325, 29 S.Ct. 503, 53 L.Ed. 816 (1908), a case noted approvingly in the Aro decision, Mr. Justice McKenna, speaking for the Court of the right to supply and use a phonograph record, part of a patented talking machine combination, pointed out that the intentional supplying of phonograph records, not to replace records deteriorated by use, or which had suffered breakage, constituted contributory infringement, insofar as the supplying of records indicated an intention merely to increase the repertory of tunes available to the purchaser of the patented combination.

There the Court concluded that the licence granted to a purchaser of a patented combination does not extend beyond preserving its fitness for use "so far as it may be affected by wear or breakage." (at 336, 29 S.Ct. at 507).

Some opinions have gone further to indicate that a purchaser of a patented machine may go beyond repairs and improve the machine as he pleases. Chaffee v. Boston Belting Co., 22 How. 217, 223, 16 L.Ed. 240 (1859); Aiken v. Manchester Print Works, 1 Fed.Cas. p. 245, No. 113 (C.C.N.H.1865); Thomson-Houston Electric Co. v. Kelsey Electric Ry., 75 F. 1005 (2d Cir. 1896).

Such references have not indicated, however, that by the term "improve" is meant a change to another purpose; rather a change merely to better perform the purpose originally intended by the patentee. Cf. Ideal Wrapping Machine Co., supra, 23 F.2d 851. (District Court opinion).

Indeed, the Court in Aiken, supra, Mr. Justice Clifford, stated: "The indubitable right of the defendants is to repair or improve the articles as long as they will last, but they cannot make new ones, nor can they, in the exercise of their right to repair the old ones, infringe another man's patent." (1 Fed. Cas. at 247).

Similarly, the Court in Thomson-Houston Electric Co., supra, modifying an order to allow a supplier of trolley stands to sell its products to electric railways for substitution of trolley stands (considered by the Court a non-vital element of a patented combination purchased from plaintiffs) to improve their stands through adaptation according to their needs, stated that its permission did not give defendant supplier authority to reconstruct or rebuild a combination which had been sold by the patentee.

Where Courts have gone further to allow a rebuilding of a machine under the notion that such change constituted a legitimate improvement, their error has been corrected upon appeal. See, National Cash Register Co. v. Grobet, 148 F. 385 (S.D.N.Y.1906), reversed 153 F. 905 (2d Cir. 1907).

In this regard, we may also note that in the Miller Hatcheries case, supra, the Court said, 41 F.2d at 621, that in addition to the right of repair, the pur-

chaser of a patented device has the right, within certain limits, to change the device so as to make it adapted to his particular use, citing Thomson-Houston Electric Co., supra; Aiken, supra; and Wilson v. Simpson, 9 How. 109, 125, 13 L.Ed. 66 (1850). The first two cases have already been discussed, and the last has no pertinence here.

We do not regard the reference in the Miller Hatcheries case to these cases as an expression of the view that the possessor of a patented combination may alter it to produce different results to his liking without being liable for infringement. Nor did the Court so regard these cases. As already noted, the Court held that the conversion of egg incubators so as to accommodate twelve trays instead of nine was an infringement.

*Repair of the Machines*

Although the issue is not tendered by the complainant, evidence was introduced without objection by defendant concerning, and both parties have argued, the further point that defendants infringed plaintiff's patent by reconstructing three machines, involving the patented entity, after the machines viewed as a whole, had become "spent" within the meaning of Aro.

The evidence on this issue is to the effect that these three machines had been owned by Hovden Food Products Corporation which shut down its Moss Landing plant in 1952. The machines were left in the plant building until 1958 when the plant, including the machines, was sold to a syndicate, lock, stock and barrel, without placing a price on the three machines which were apparently regarded as "junk". Defendant, Wilbur Ellis, subsequently purchased these three machines for $1250 each.

The machines had been unused, untended, exposed to rain and salt air, corroded and frozen solid to the extent that they were inoperable when acquired by Wilbur Ellis.

Wilbur Ellis arranged with defendant, Leuschner, to recondition the machines,

and also to reconvert them for five ounce cans, at a cost of $1600 each, $1350 for the reconditioning and $250 for the structural conversion.

The reconditioning was accomplished by cleaning and sandblasting the corrosion to make the machines operable. Certain can supports (27 on the drawings), although normally as long lived as the machines, had rusted away and were replaced. Certain plungers (28 on the drawings), originally designed of a diameter for one pound cans, were so corroded that they could be rendered operable only by grinding them down and thereby so reducing the diameter that the plungers would be no longer operable for one pound cans and would be operable at all only for smaller five ounce cans. Similarly, certain pockets (15 on the drawing) and compressors (19 on the drawing) could be salvaged only by inserts to change their original size.

In Aro, supra, the Court cited with approval, its previous decision in Wilson v. Simpson, supra, to the effect that although there is no right to "rebuild" a patented combination, the entity exists notwithstanding the fact that destruction or impairment of one of its elements renders it inoperable; that, accordingly, replacement of that worn out essential part is permissible restoration of the machine to the original use for which it was bought; that such replacement of the worn out, damaged or destroyed part is but an exercise of the right "to give duration to that which he owns, or has a right to use as a whole." Ibid. The Court continued, that repair is not to be tested according to whether the replaced element is minor or major in relation to the whole, or according to its relative life span, or according to its essential relation to the whole; that a combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant; that maintenance of the "use of the whole" of the patented combination, through replacement of a spent, unpatented element does not constitute reconstruction; that reconstruc-

tion of a patented entity comprised of unpatented elements, is limited to such a true reconstruction of the entity as to in fact make a new article after the entity, viewed as a whole, has become spent —a second creation of the patented entity, as, for example, the discarded patented metal baling straps in Cotton Tie Co. v. Simmons, 106 U.S. 89, 1 S.Ct. 52, 27 L.Ed. 79.

Applying these rules, the Court finds and concludes that the reconditioning of these three machines by cleaning, sandblasting and replacement, insofar as it restored them to their original condition after years of neglect and exposure did not result in the making of a new article or a second creation of the patented entity.

However, as previously noted, defendants did not rest satisfied with restoration of the machine to its original condition. They proceeded to change its elements, not to restore the original, but to build another machine designed to fill cans of a different size than the cans for which the original was manufactured and sold.

In so doing defendants, for the reasons already stated, infringed the rights reserved to plaintiff under the patent.

Defendants further claim that plaintiff's patents are invalid, because of prior art, as disclosed in Sanders, No. 1,935,997 (Ex. F), and Paynter, No. 218,813 (Ex. G), all patents for machines to pack salmon.

The evidence, however, shows that such machines would be useless for packing small fish, sardines, and that plaintiff's machine would be useless for large fish—salmon; that the machines are different in operation and purpose; that plaintiff's machines were extensively introduced into the sardine packing industry, and that they replaced hand packing with substantial economic savings; that defendant Wilbur Ellis was, itself, a comparatively large buyer of the machines at prices of $8000–$10,000 each, prices which included profit to the patent licensees.

It is true that evidence of commercial success is not conclusive upon the issue of patentability, See Pointer v. Six Wheel Corp., 177 F.2d 153, 156 (9th Cir. 1949), but the evidence in the pending cases establishes that the differences between the subject matter of plaintiff's patent, on the one hand, and the prior art as disclosed in earlier patents, on the other, would be such as to render the plaintiff's patent valid.

For the reasons herein set forth, we are of the opinion that judgment should be entered in favor of the plaintiff and against the defendant in these actions. As prevailing party, plaintiff will prepare findings of fact and conclusions of law in accordance with this memorandum opinion and in conformity with the Rules of this Court.