## LEEDS & CATLIN COMPANY v. VICTOR TALKING MACHINE COMPANY (NO. 2).

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 81. Argued January 18, 1909.—Decided April 19, 1909.

*Leeds & Catlin Co.* v. *Victor Talking Machine Co.*, *ante*, p. 301, followed as to validity of Berliner patent for talking machines.

There is a distinction between the article which a combination machine deals with and the constituent elements composing the combination; and while it may not be infringement to supply the unpatented article dealt with by the combination, it is infringement to make and supply an unpatented element, necessary for the operation of the combination. *Morgan Envelope Co.* v. *Albany Paper Co.*, 152 U. S. 425, distinguished.

The combination itself, regardless of whether any or all of the elements be old or new, is the invention and, in law, is as much a unit as a single or non-composite instrument and one using or contributing to its use without permission infringes it.

Whether the elements of a combination patent are or are not patented is immaterial.

Where an element of a combination becomes unfit by deterioration there is a destruction of the combination and a renewal of that element amounts to reconstruction.

The right of substitution or resupply of elements of a combination extends only to repair and replacement made necessary by deterioration so as to preserve its fitness; license goes no further and does not extend to furnishing such elements to increase effectiveness or variety of the results of the combination.

Unpatented elements of a patented combination may not be sold for use therewith although they may legally be sold for use with other machines, and so *held* that it was infringement to sell record discs specially adapted therefor to the users of a patented talking machine although such discs were not patented and could lawfully be used in combination with other talking machines.

150 Fed. Rep. 147; 154 Fed. Rep. 58, affirmed.

THE facts are stated in the opinion.

*Mr. Louis Hicks* for petitioner:

The sound record is a temporary element of the combination forming the machine of the patent in suit and it is intended that the sound record shall frequently be replaced. The machine has no other use. It is well settled law that purchasers of such combinations from the patentee or his licensees have the right to replace such temporary parts, and that any manufacturer has the right to sell such parts to such purchasers for such purpose. The courts below, therefore, erred in holding that defendant violated the injunction by selling records with the intent that the same should be used in combination with the other elements of claim 35, in machines sold by complainants or their licensees combined with such records. *Morgan Envelope Co.* v. *Albany Paper Co.*, 40 Fed. Rep. 577; *S. C.*, 152 U. S. 425.

The Circuit Court of Appeals, following the decisions of this court, has held that the purchaser of a patented combination has the legal right immediately to substitute for an important or essential element of the combination one which he conceives

to be better suited to his purposes, even though such element was intended to be permanent; and that any one has an equal right to make and sell such elements to such purchaser for such purpose. *Thomson-Houston Electric Co.* v. *Kelsey Co.*, 75 Fed. Rep. 1005. See also *Chaffee* v. *Belting Co.*, 22 How. 217; *Wilson* v. *Simpson*, 9 How. 109; *Mitchell* v. *Hawley*, 16 Wall. 544, 548; *Adams* v. *Burke*, 17 Wall. 453, 456; *Edison Light Co.* v. *Peninsular Co.*, 101 Fed. Rep. 831, 835, 837.

No question of contributory infringement is here involved. Judge Shipman's decision in *Am. Graph. Co.* v. *Leeds*, 87 Fed. Rep. 873, cited by the Circuit Court, bears no analogy to the case at bar. Judge Grosscup's opinion in *Am. Graph. Co.* v. *Amet*, 74 Fed. Rep. 789, supports petitioner's contentions.

Complainants and their licensees having sold the combination of the patent to purchasers without restriction as to the records to be used to replace those purchased, it is well settled law that defendant has the right to sell records to such purchasers for use in replacing records purchased with machines from complainants and their licensees. *Heaton Co.* v. *Eureka Co.*, 77 Fed. Rep. 288; *Cortelyou* v. *Johnson*, 207 U. S. 196; *Keeler* v. *Folding Bed Co.*, 157 U. S. 659, 666; *Hobbie* v. *Jennison*, 149 U. S. 355; *Adams* v. *Burke*, 17 Wall. 453; *Bement* v. *Harrow Co.*, 186 U. S. 70; *Hartell* v. *Tilghman*, 99 U. S. 547; *Bobbs-Merrill Co.* v. *Strauss*, 210 U. S. 339.

Defendant's disc sound-records are unpatented articles of commerce of the prior art, which defendant could legally sell for use in the United States on mechanical feed-device machines, for export to foreign countries, concededly for repair of machines sold by complainants, and for other lawful purposes. There is no authority holding a party liable as an infringer solely because an article sold by him might be, or was, in fact, used by the purchaser as one element of a patented combination. The tendency of the later decisions is to do away with unwarrantable restrictions upon trade. *Bullock Co.* v. *Westinghouse Co.*, 129 Fed. Rep. 105, 111; *Cortelyou* v. *Johnson*, 145 Fed. Rep. 933; *Snyder* v. *Bunnell*, 29 Fed. Rep. 47, 48; *Standard*

*Co.* v. *Computing Co.*, 126 Fed. Rep. 639; *Canda* v. *Michigan Co.*, 124 Fed. Rep. 486.

Complainants and their licensees, by selling the sound repro-
ducing apparatus of claim 35 of the patent in suit, impliedly
licensed the purchaser thereof to combine a suitable record
therewith, in every case where the apparatus was sold without
a sound-record combined therewith, and for that purpose to
purchase such a record from persons other than complainants
or their licensees. *Morgan Envelope Co.* v. *Albany Paper Co.*,
152 U. S. 425, 432; *Heaton Co.* v. *Eureka Co.*, 77 Fed. Rep. 288,
300; *Edison El. Co.* v. *Peninsular Co.*, 101 Fed. Rep. 831,
836; *Thomson-Houston Co.* v. *Illinois Co.*, 152 Fed. Rep. 631;
*Roosevelt* v. *Western El. Co.*, 20 Fed. Rep. 724.

The finding of the Circuit Court places an intolerable burden
upon the defendant's conceded right to make and sell the un-
patented sound-records of the prior art. *Thomson-Houston Co.*
v. *Kelsey Co.*, 75 Fed. Rep. 1005; *Cortelyou* v. *Johnson*, 207
U. S. 196.

The question raised in the Circuit Court upon the motion to
punish defendant for contempt was an entirely new question.
The act for which defendant was held to be in contempt was not
included in the preliminary injunction or the decree therefor.
Under such circumstances the motion should have been denied
and complainants left to raise the question by appropriate
proceedings other than a motion to punish for contempt. *En-
terprise Co.* v. *Sargent*, 48 Fed. Rep. 453, 454; *Bate* v. *Eastman*,
11 Fed. Rep. 902 (Blatchford, C. J.); *Allis* v. *Stowell*, 15 Fed.
Rep. 242, 244 (Dyer, J.); *Temple Pump Co.* v. *Goss Co.*, 31 Fed.
Rep. 292 (Blodgett, J.); *Truax* v. *Detweiller*, 46 Fed. Rep. 117
(Lacombe, C. J.); *Bonsack Mach. Co.* v. *National Co.*, 64 Fed.
Rep. 858 (Lacombe, C. J.); *United States Co.* v. *Spalding*, 93
Fed. Rep. 822 (Wheeler, D. J.).

Complainants presented no proof whatever that the sound-
records sold by defendant were in a single instance used or in-
tended to be used in any infringement of the claims in suit; no
proof whatever that the sound-records sold by defendant were

used for the reproduction of sound on any machine of any construction. The mere making and selling of an unpatented article is not an infringement of a claim for a combination of which that article is an element.

The record in the contempt proceedings includes the record in the injunction proceedings. The patent in suit having expired before the suit was begun, the Circuit Court was without jurisdiction to entertain the suit. The claims in suit, moreover, are void. Hence the judgment finding defendant in contempt was void, because beyond the jurisdiction of the court, and should be set aside, because, the claims being void, the injunction was improperly granted.

*Mr. Horace Pettit* for respondent.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This writ was issued to bring up for review the judgment of the Circuit Court, affirmed by the Circuit Court of Appeals, adjudging petitioner guilty of contempt of court for violating the injunction which has just been considered in No. 80, and to pay a fine of $1,000, one-half to the United States and one-half to complainants in the suit, respondents here.

The injunction, as we said in the opinion in No. 80, enjoined petitioner, the Leeds & Catlin Company, from manufacturing, using or selling the method expressed in claim 5 of letters patent No. 534,543 to Emil Berliner, dated February 19, 1895, or the apparatus covered by claim 35.

On the fifteenth of November, 1906, respondent, Victor Talking Machine Company, filed a petition in the Circuit Court, charging petitioner with a violation of such injunction. A rule was issued against the Leeds & Catlin Company to show cause why an attachment should not issue against it for contempt of court for violating the injunction, which came on to be heard upon supporting and opposing affidavits and the answer of the Leeds & Catlin Company.

A judgment was entered adjudging the Leeds & Catlin Company guilty of contempt, which was affirmed by the Circuit Court of Appeals. 150 Fed. Rep. 147; 154 Fed. Rep. 58.

The answer of petitioner referred to the record in No. 80, and in this court it is stipulated that that record shall be used as part of the record in the pending cases, and certain of the defenses there made are repeated here. For instance, it is contended, and the record in No. 80 is adduced to support the contention, that (1) the patent in suit having expired before the suit was begun, the Circuit Court was without jurisdiction to entertain the suit; (2) claims in suit being for the functions of a machine are void. And it is further contended that "hence the judgment finding defendant [petitioner] in contempt (a) was void, because beyond the jurisdiction of the court; and (b) should be set aside, because the claims being void the injunction was improperly granted." These contentions are disposed of by the opinion in No. 80, and we may confine our discussions to the other defenses made in the contempt proceedings.

The facts are practically undisputed, and a detail of them is unnecessary. It is enough to say that petitioner is a manufacturer of disc records, such as are described in No. 80. That is, a record upon which is inscribed a lateral undulating groove of even depth, which, when the disc is revolved, compels the reproducing stylus to be vibrated and propelled across its face.

It will be observed how important the record is to the invention embodied in the claims. It is the undulations in the side walls of the spiral groove which vibrate the stylus back and forth, transmitting the recorded sound waves to the diaphragm, at the same time propelling the stylus as it engages with the record. If a comparison may be made between the importance of the elements, as high a degree (if not a higher degree) must be awarded to the disc with its lateral undulations as to the stylus. It is the disc that serves to distinguish the invention—to mark the advance upon the prior art. "As to the reproducing stylus," as is said by respondent, "it is only necessary that it should be shaped for engagement with the record

and so positioned and supported as to be free to be vibrated and propelled by the record."

The lower courts found that most of the sales (we quote from the opinion of the Circuit Court of Appeals) of the records by petitioner "were knowingly made to enable the owners of the Victor Talking Machines to reproduce such musical pieces as they wished by the combination of the Leeds & Catlin record with said machines; and that the Leeds & Catlin Company made no effort to restrict the use to which their records might be put until after motion to punish for contempt had been made; that the only effort at such restriction ever made was to answer upon the face of the record and notice to the effect that such record was intended and sold for use with the 'feed-device machine;' that the records sold by plaintiff in error [petitioner] were far more frequently bought to increase the repertoire of the purchaser's Victor machine than to replace worn-out or broken records." The "feed-device machine" referred to by the court was a talking machine bought by petitioner after, as petitioner avers, the Circuit Court of Appeals affirmed the injunction, and in connection with which it sold, as it also avers, and used, its sound records. The court assumed, for the purpose of the cause, that the feed-device machine might be regarded as not infringing any of the rights of the Victor Company under the Berliner patent. The court further found that it was established by the evidence that the discs were equally suitable for that machine as for the machine of the Victor Company, but that it "was not at or before the time of beginning this proceeding a practically or commercially known reproducer of musical or spoken sound, whereas the Victor machine, embodying the claims of the Berliner patent here under consideration, was at such times widely known and generally used, and that the plaintiff in error [petitioner] knew, and sold its records with the knowledge, that if its output was to be used at all by the public it would be used with the Victor machine, and in the combination protected by the claims of the Berliner patent, before referred to." And the court concluded that upon these

facts it was clear that petitioner had "made and sold a single element of the claims of the Berliner patent, with the intent that it should be united to the other elements and complete the combination. And this is infringement. *Heaton Peninsula Co.,* v. *Eureka Co.,* 77 Fed. Rep. 297; adopted by this court, *Courtelyou* v. *Lowe,* 111 Fed. Rep. 1005."

Petitioner contests the conclusion and opposes it by the principle, which, it is contended, is established by cases in this court, as well as at circuit, that "the person who has purchased a patented combination from the patentee has the right to replace an unpatented element of the combination and for such purpose to purchase such element from another than the patentee or his licensee." To bring this principle in clear relief it is said that "the majority of the Circuit Court of Appeals has held that such replacement of a single unpatented element of the combination is reconstruction and not within the rights of the purchaser of the patented combination from the patentee." And, to complete its argument, petitioner adds that where an inventor so arranges the parts of his patented combination that it cannot satisfactorily, successfully or usefully be continued in use, without successive replacements of one of its elements, "the replacement of such element, if unpatented, by the purchaser of the combination from the patentee is in *accordance with the intention of the patentee and not a reconstruction* of the patented combination, but an act within the rights of the purchaser." For these principles *Morgan Envelope Co.* v. *Albany Paper Co.,* 152 U. S. 425; *Wilson* v. *Simpson,* 9 How. 109; *Goodyear Co.* v. *Jackson,* 112 Fed. Rep. 146, are adduced.

The question in the case, therefore, is single and direct, and its discussion may be brought to a narrow compass. Its solution depends upon the application of some rudimentary principles of patent law.

A combination is a composition of elements, some of which may be old and others new, or all old or all new. It is, however, the combination that is the invention, and is as much a unit in contemplation of law as a single or non-composite instrument.

Whoever uses it without permission is an infringer of it. Whoever contributes to such use is an infringer of it. It may be well here to get rid of a misleading consideration. It can make no difference as to the infringement or non-infringement of a combination that one of its elements or all of its elements are unpatented. For instance, in the case at bar the issue between the parties would be exactly the same, even if the record disc were a patented article which petitioner had a license to use or to which respondent had no rights independent of his right to its use in the combination. In other words, the fact that the disc sold by petitioner is unpatented does not affect the question involved except to give an appearance of a limitation of the rights of an owner of a Victor machine other than those which attach to him as a purchaser. The question is, What is the relation of the purchaser to the Victor Company? What rights does he derive from it? To use the machine, of course, but it is the concession of the argument of petitioner that he may not reconstruct it. Has he a license to repair deterioration, and when does repair become reconstruction? It would seem that on principle when deterioration of an element has reached the point of unfitness there is a destruction of the combination and a renewal of the element is a reconstruction of the combination. And it would also seem on principle that there could be no license implied from difference in the durability of the elements or periodicity in their use. This, however, is asserted, and we come to the consideration of the cases upon which the assertion is based, and how far it has application under the facts of this record.

Great stress is put upon *Morgan Envelope Co.* v. *Albany Co.,* *supra.* That case was a bill in equity for the infringement of three letters patent, one for a "package of toilet paper," known as an "oval roll" or "oval king" package; one for a "toilet paper fixture," and one for an "apparatus for holding toilet paper." The first patent was declared invalid for want of novelty. Of the other two it was said that they were practically the same and were for a "combination of the paper roll de-

scribed in the former patent, with a mechanism for the delivery of the paper to the user in an economical manner." It was conceded that the mechanism of the patents involved patentable novelty, but it was contended that it being constructed for the purpose of delivering paper to users in convenient length such a roll was not a proper part of the combination, and that, conceding it was a part of the combination, there was no infringement. The first contention, the court said, raised the question whether, when a machine is designed to manufacture, distribute or serve out to users a certain article, the article so dealt with can be said to be a part of the combination of which the machine itself is another part. In commenting on the question the court expressed the view that if the contention could be sustained "it would seem to follow that the log which is sawn in the mill, the wheat which is ground by rollers, the pin which is produced by the patented machine, the paper which is folded and delivered by the printing press," might be claimed as an element of a combination. The court, however, refrained from expressing an opinion upon the point, because it conceived that the facts of the case failed to sustain the charge of infringement. And this on the ground that the defendants in the suit had neither made, sold nor used the patented mechanism, except as they purchased it from the patentee, and the only acts proven against them were that they sold rolls of paper of their own manufacture with fixtures manufactured and sold by the plaintiff, the fixtures having been obtained by defendants from the original purchasers of the patented combination; and also of selling oval rolls of paper of their own manufacture to persons who had previously purchased fixtures and paper from the plaintiff, with the knowledge and information that the paper so sold was to be used in connection with plaintiff's fixtures. The court stated the question to be whether, considering the combination of the oval roll with the fixture to be a valid combination, the sale of one element of *such* (italic ours) a combination with the intention that it should be used with the other elements was an infringement. The answer was in the

negative. The court, however, stated, that there were cases to the effect that the sale of one element of a combination with intention that it should be used with another was an infringement, but decided that they had no application to one where the element made by the alleged infringer was "an article of manufacture, perishable in its nature, which it is the object of the mechanism to deliver, and must be renewed periodically whenever the device is put to use." The case, therefore, is not a precedent for the decision of that at bar. Not one of the determining factors there stated exists in the case at bar. If the operative relation of the paper roll to the mechanism was as illustrated (and the court left no doubt that it was), that is, of the log to the saw in the mill, wheat to the rollers which grind it, pins which are produced by a patent machine; in other words, in no more operative relation than a machine and its product are, the invalidity of the combination was hardly questionable. And, besides, it was made a determining circumstance that the paper perished by its use, and a periodical renewal was indicated to be a renewal "whenever the device was put to use." The case has no principle or reasoning applicable to the case at bar. The combination in the case at bar is valid, as we have unhesitatingly declared. The function it performs is the result of the joint action of the disc and the stylus. The disc is not a mere concomitant to the stylus; it co-acts with the stylus to produce the result. Indeed, as we have seen, it is the distinction of the invention, constituting, by its laterally undulating line of even depth and the effect thereof, the advance upon the prior art. To confound its active coöperation with the mere passivity of the paper in the mechanism described in the *Morgan Envelope Company case* is not only to confound essential distinctions made by the patent laws, but essential distinctions between entirely different things. Besides, the lower courts found that the discs were not perishable. As said by the Court of Appeals, by Judge Hough: "Disc records are fragile, *i. e.*, brittle and easily broken; but they are not perishable, *i. e.*, subject to decay by their inherent qualities, or consumed by few uses.

or a single use.  Neither are they temporary, *i. e.*, not intended to endure; on the contrary, we find that they are capable of remaining useful for an indefinite period, and believe they usually last as long as does the vogue of the sounds they record."

Can petitioner find justification under the right of repair and replacement as described in *Wilson* v. *Simpson*, 9 How. 109, and *Chaffee* v. *Boston Belting Co.*, 22 How. 217?  The Court of Appeals, in passing on these cases, considered that there was no essential difference between the meaning of the words "repair" and "replacement."  That they both meant restoration of worn-out parts.  This distinction was recognized in *Wilson* v. *Simpson, supra*, where it is said that the language of the court in *Wilson's and Roussan's Case*, 4 How. 709, did not permit the assignee of a patent to make other machines or reconstruct them in gross upon the frame of machines which the assignee had in use, "but it does comprehend and permit the resupply of the effective ultimate tool of the invention, which is liable to be often worn out or to become inoperative for its intended effect, which the inventor contemplated would have to be frequently replaced anew, during the time that the machine as a whole might last."  But there is no pretense in the case at bar of mending broken or worn-out records, or of repairing or replacing "the operative ultimate tool of the invention" which has deteriorated by use.  The sales of petitioner, as found by the courts below, and as established by the evidence, were not to furnish new records identical with those originally offered by the Victor Company, but, to use the language of Judge Lacombe in the Circuit Court, "more frequently in order to increase the repertory of tunes than as substituted for worn-out records."

The right of substitution or "resupply" of an element depends upon the same test.  The license granted to a purchaser of a patented combination is to preserve its fitness for use so far as it may be affected by wear or breakage.  Beyond this there is no license.

It is further contended by petitioner that the disc records,

being unpatented articles of commerce which could be used upon the mechanical feed device machine or exported to foreign countries, or concededly for repair of machines sold by respondent, petitioner could legally sell the same. A detailed comment on this contention or of the cases cited to support it we need not make. The facts of the case exclude petitioner from the situation which is the foundation of the contention. The injunction did not forbid the use of the records, except in violation of claims 5 and 35 of respondent's patent. The judgment for contempt was based upon the facts which we have detailed and they show a sale of the records for use in the Victor machine, "an entirely voluntary and intentional" (to use the language of Judge Lacombe) contributory infringement.

We have seen that the Circuit Court of Appeals assumed, for the purposes of this cause, that the feed device machine was not an infringement of the machine of the patent. We may assume the same, and we are relieved from reviewing the very long and complex affidavits submitted by the petitioner to explain the same, petitioner's relation to it or its position in the art of sound reproduction. Petitioner was found guilty of selling records which constituted an element in the combination of the patent in suit, and for that petitioner was punished. Upon whatever questions or contentions may arise from the use of the feed device machine we reserve opinion.

We have not reviewed or commented upon the other cases cited respectively by petitioner and respondents in support of their contentions, deeming those we have considered and the principles we have announced sufficient for our decision.

*Judgment affirmed.*