## PERMUTIT CO. v. PAIGE & JONES CHEMICAL CO., Inc.

Circuit Court of Appeals, Second Circuit.
December 5, 1927.

No. 183.

**I. Patents ⬥⇒298—Question of infringement of patent No. 1,195,923, claim 5, held to present substantial controversy, which should be determined on final hearing, rather than on affidavits, warranting preliminary injunction.**

Question of infringement of patent No. 1,195,923, claim 5, issued August 22, 1916, for water softening apparatus, *held* to present sufficient doubt and substantial controversy between parties that question should be determined on final hearing, rather than on affidavits, so as to warrant preliminary injunction.

**2. Patents ⬥⇒328—1,195,923, claim 5, for water softening apparatus, held not anticipated by German Gebrauchsmuster 341,512.**

Patent No. 1,195,923, claim 5, for water softening apparatus, issued August 22, 1916,

*held* not anticipated by German Gebrauchsmuster 341,512, issued in 1907, since it is apparent that German inventor did not have regeneration and back-washing in mind, and did not anticipate what inventor of patent in suit had in mind in claim 5.

Appeal from the District Court of the United States for the Southern District of New York.

Patent infringement suit by the Permutit Company against the Paige & Jones Chemical Company, Inc. From an order granting a temporary injunction (292 F. 239), defendant appeals. Affirmed, as modified.

Briesen & Schrenk, of New York City (Hans v. Briesen and Charles Neave, both of New York City, of counsel), for appellant.

James Q. Rice and M. C. Massie, both of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. A preliminary injunction has been granted for infringement of claim 5 of the patent in suit, No. 1,-195,923, issued August 22, 1916, now owned by the appellee. Claims 1 and 5 of the patent have heretofore been sustained in this court in Permutit v. Harvey Laundry Co., 279 F. 713, and in the Sixth Circuit in Permutit v. Wadham et al., 13 F.(2d) 454.

This injunction was granted upon motion, supported by affidavits; no testimony having been taken. The patent relates to zeolite water softeners. The softeners produce a water which is completely free from hardening constituents and is called "zero water." Water is hard, because it contains the salts of lime and magnesium in solution. Water softening zeolites are sandlike grains or green sand, called glauconite. The zeolites are a chemical composition, consisting of an acid and a base, and their value in water softening resides in the fact that they change their chemical constitution by exchanging and re-exchanging their bases. The idea of the invention is that water passing through zeolites is softened. When the zeolites have exhausted their capacity for this exchange of sodium for lime and magnesium, the hard water is cut off, and a solution of sodium chloride is run through them. They give up, by this process, to the brine the lime and magnesium which they have taken up from the water, and take back the sodium base. This is referred to as regenerating the zeolites. After the salt solution has been washed out of the bed

thoroughly, the zeolites are in condition for another softening run.

The apparatus constructed and used by the appellee comprises a casing containing a suitably supported layer of zeolites, an inlet at the top for hard water, and an outlet at the bottom for soft water; also an inlet for regenerating the salt solution, and an outlet connected with the lowest point in the casing for permitting the salt solution, at the end of the regenerating period, to be completely drawn from the casing. It is constructed much as an ordinary sand filter, with provision for the regenerating or salting operation required by the greensand. The zeolites are put into the casing, and means provided for alternately flowing the hard water, and regenerating the mineral by treatment with the salt solution. This arrangement of inlet and outlet pipes permits the hard water first to come in contact with the finer particles of zeolite, which are at the top of the zeolite layer by reason of their small size, and form a layer of hard resistance to the water flow, and an even distribution of the water throughout the entire bed.

We pointed out in Permutit v. Harvey Laundry Co., 279 F. 715, that there was necessity for a back-washing operation, such that, when it occurs, the mineral is boiled up, and thereby automatically regrades itself, so that the coarser particles are at the bottom and the finer at the top. It is essential that the salt solution be completely drawn from the casing, so that, when the water softening period begins, no part of the liquid used during the regenerating period can possibly enter the service line, or the line which conducts the soft water to the point of use. Claim 5 reads as follows:

"5. Water softening apparatus, comprising a casing, a filter bed consisting of a layer of zeolites or alumino-silicates, supporting means for said layer, means for permitting the passage of water through the casing, means for cutting off the supply of water on the exhaustion of the zeolites, means for supplying and passing into the casing a solution of a salt capable of regenerating zeolites, and means connected to the lowest point of the casing for removing the salt solution so introduced."

The appellant's apparatus has an inlet for hard water at the bottom of the casing, and it provides for the water to flow upward through the zeolites. Its claim is that it has no provision capable of forming a layer of finer particles at the top to offer hard resistance to the water flow, or of making use of any such layer to effect an even distribution

of the water, and that it has no provision for back washing. It locates its outlets for liquids used during regeneration, so it claims, as makes it impossible to drain the apparatus completely, and it becomes necessary to pass into a service line, when the water softening begins, that part of the regenerating liquid which was trapped in the pool at the bottom of this apparatus. It says its apparatus is designedly constructed to contain traps and pockets within which the residual salt solution of the regenerating treatment may collect, and from which residual salt solution cannot be drawn away. If the apparatus is not drained at any time, the only way the salt solution can be removed from the apparatus is by keeping the apparatus full of water at all times, and by utilizing the pool of salt solution at the bottom at the end of the regenerating period for regenerating the upper layer of mineral, as the witness Sweeney explains in his affidavit, so as to make it necessary for the salted water pool to remain in the casing during the softening period, and, after having done the special work required of it, to pass into the soft water service line.

[1] Whether or not there is a difference between a container having a member at its lowest point through which the entire contents of the liquid container can be drained off until the container is entirely free of liquid, and a container which has no provision for draining off anything, but in which the removal of the undesired constituent is effected by forcible hydraulic rejection in an upper direction, followed by rejection of its residual pool into the soft water line of the system, is a matter that should not be tried out by affidavit, but upon testimony, where opportunity is afforded of cross-examination and testing the respective claims. We express no opinion as to the merits of this controversy. We hold merely that the question presents sufficient doubt and a substantial controversy between the parties, which should be determined upon final hearing rather than upon affidavits. Geo. Cutter Co. v. Metropolitan El. Mfg. Co. (C. C. A.) 275 F. 158; Victor Talking Machine Co. v. Starr Piano Co. (C. C. A.) 263 F. 82; Boyce v. Stewart-Warner, etc., Co. (C. C. A.) 220 F. 118.

On March 2, 1920 the inventors filed a disclaimer which disclaimed from the scope of claim 1 of the patent "any water softening apparatus including a layer of zeolites or hydrated alumino-silicates disposed on a layer of sand or quartz in which the water to be softened is so introduced into the casing that it passes upwardly through said layer of zeolites." This, however, does not extend to claim 5. We may not so construe it. Permutit v. Harvey, supra; Permutit v. Wadham (C. C. A.) 15 F.(2d) 20.

[2] It is urged on this appeal that the German Gebrauchsmuster, 341,512, issued in 1907, is a patent which anticipated the appellee's. This paper was not in the record in Permutit v. Harvey, supra. Even if it may be said to show crudely a casing, a bed of zeolites, means at the top of the casing to admit hard water, means at the lower part of the casing for the withdrawal of soft water, and means by which a regenerating salt solution may be introduced in the casing, and means at the lowest point in the casing for removing the salt solution, it did not anticipate. Under claim 5, here in suit, in regeneration and back washing, a top of the casing was essential, for the zeolites would boil up, and they must be kept from overflowing or burning out. Back washing is referred to in the specifications, and the patentee intended to have a casing that would control such back washing. It is apparent that the German inventor did not have regeneration and back washing in mind. The German Gebrauchsmuster did not anticipate what this inventor had in mind in claim 5. See Milburn Co. v. Davis, 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651; Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816.

Accordingly, the order will be modified, by striking out that part thereof which enjoins the manufacture, use, and sale of the apparatus referred to therein as the Paige & Jones Domestic Greensand Upward Flow Softener, Paige & Jones Synthetic Upward Flow Softener, and Paige & Jones, Inc., Upward Flow Softener. The question of infringement as to these will be determined upon the trial of the issues. The order otherwise will be affirmed.

Order modified.