## ALEMITE MFG. CORPORATION v. HI-PRESSURE SALES CO., Inc.

District Court, N. D. California, S. D. July 26, 1929.

No. 2207.

Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., and Lyon & Lyon, of Los Angeles, Cal., for plaintiff.

Miller & Boyken, of San Francisco, Cal., and Lincoln V. Johnson, of San Francisco, Cal., for defendant.

KERRIGAN, District Judge. The bill in this case charges defendant with infringement of Gullborg patent, No. 1,307,734, which describes and claims what is known as the Alemite lubricating system of equipment, which has come to be of practically universal use in the lubricating of automobiles. At the trial defendant conceded the validity of this patent.

The Gullborg patent is a combination patent. Claims 1, 2, 3, 4, 8, 14, and 15 cover and describe the combination of elements comprising the lubricating system, which includes pin fittings permanently installed on each of the bearings of an automobile, the compressor or grease gun from which the lubricant is forced into the bearing, and the coupler adapted to the pin fittings and designed to form the connection between the compressor and the pin fitting. The complete combination of the patent is made, not by the patentee, but by the user of an automobile, who attaches the compressor by means of the coupler to the pin fittings installed in the car at the factory. A large proportion of car owners prefer not to use the compressor or grease gun and coupler furnished as part of the tool equipment of Alemite-fitted automobiles, but to have this done at garages and service stations. This situation has resulted in the development for the plaintiff, Alemite Manufacturing Corporation, of a considerable market for their grease gun and coupler equipment apart from the sets furnished with automobiles. It has also resulted in many cases of direct or contributory infringement by the makers of grease gun and coupler equipment designed to be connected to the Alemite pin fittings installed in automobiles.

Defendant makes and sells what is known as the "Hercules" grease gun, together with hose and a means of connection with automobile bearings. Plaintiff charges that, while this compressor equipment may be so used as not to constitute a direct infringe-

ment of the Gullborg patent, it is so designed that a very simple alteration will adapt it to an infringing use, and that defendant is guilty of contributory infringement, in that its compressor equipment was made and sold with the knowledge that such infringing use was possible, and in the expectation that an infringing use would in fact be made.

The compressor apparatus of defendant consists of a grease gun designed to develop very high pressure and a hose terminating in a ferrule on which is screwed a one-eighth inch pipe thread adaptor or nipple. If the Alemite pin fitting on an automobile bearing is unscrewed and removed, the one-eighth inch pipe thread will screw into the open bearing, and grease may be forced into the bearing. Plaintiff conceded that such use does not infringe its combination patent. The thread at the opposite end of defendant's adaptor or nipple, by which it is screwed to the ferrule, is of an unusual size and thread, being eleven-sixteenths inch in diameter and twenty-seven threads to an inch. This is the same thread as that selected by plaintiff to join the bayonet coupler covered by its patent to the hose leading from its compressor. Plaintiff asserts that this unusual thread was adopted by defendant on account of the fact that by the simple act of unscrewing the nipple provided and screwing on a genuine or imitation Alemite bayonet coupler defendant's compressor equipment could be used in conjunction with Alemite pin fittings. Plaintiff also offers evidence showing that many purchasers of defendant's compressor and hose did in fact make this alteration and did thereby infringe plaintiff's patent.

The evidence showing defendant's knowledge of such infringements and its activities in furtherance thereof is ample to sustain the charge of contributory infringement.

It appears that in 1926 one J. Waterman Fischer or J. W. Fischer was enjoined in a suit filed by plaintiff's predecessor from infringing the Gullborg patent by selling imitation Alemite equipment. In that year he arranged to receive mail at 440 Sansome street, San Francisco, and his stenographer filed a certificate under the state law of doing business under the fictitious name of West Coast Auto Supply Company. In the same year, 1926, the Hi-Pressure Equipment Company was incorporated; Louis Goodman being one of the incorporators and manager. That company sold compressor equipment somewhat different from that sold by this defendant. Its catalogues, by sketching the outline of an Alemite coupler, plainly called the attention of the trade to the feasibility of infringing plaintiff's patent. No nipple or adaptor was provided, to furnish another means than the Alemite coupler to connect the compressor with the bearing. Plaintiff's predecessor filed suit against the Equipment Company for injunction March 19, 1928, only to find that that corporation had been dissolved three weeks previously. On March 22, 1928, defendant Hi-Pressure Sales Company, Inc., was incorporated, with Virginia Fischer (Mrs. J. W. Fischer) one of three dummy incorporators. Louis Goodman became president of the defendant corporation and is for all practical purposes the sole stockholder.

Defendant commenced to make and sell the equipment in suit. Its sales were pushed by J. Waterman Fischer, who received a gross commission which he shared with the salesmen under him. It is not clear just what Mr. Fischer's position was, but it is shown that his cards and correspondence written on defendant's letterhead described him as "sales manager" or "sales supervisor." Mr. Fischer had a small room at defendant's premises and he used Louis Goodman's desk when in town. There is ample evidence from which it may be inferred that salesmen under Fischer were accustomed to meet the objection from prospective customers that the Hercules equipment could not be used with Alemite fittings, or inquiries as to where Alemite couplers to fit the Hercules equipment for such use could be obtained, by stating that defendant did not sell Alemite couplers, but that they could be bought from the West Coast Auto Supply Company. There is also evidence tending to show that inquiries for Alemite couplers made direct to defendant were answered by referring the person inquiring to the West Coast Auto Supply Company. The West Coast Auto Supply Company was J. W. Fischer.

I consider it unnecessary to go further into a relation of the evidence, which clearly establishes that defendant's equipment, on account of the eleven-sixteenths twenty-seven thread of the ferrule, was adapted to an infringing use; that defendant was aware that purchasers of its Hercules compressor equipment were using it with the Alemite coupler in violation of plaintiff's rights; that defendant was facilitating such use.

It is true that defendant's equipment was tagged with a warning reading: "To remove the coupler which is attached to this hose and substitute any other is going be-

yond the purpose for which this hose is intended. To use the attached coupler remove Alemite pin fitting or Zerk fitting and screw coupler directly into the thread of the part to be lubricated." Such warning is not sufficient, however, to protect defendant from the charge of contributory infringement, in view of the ready adaptability of its equipment to infringing use and the evidence as to defendant's conduct in that regard. Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816; Weed Chain Tire Grip Co. v. Cleveland Chain & Mfg. Co. (C. C.) 196 F. 213.

In view of the extended and authoritative discussion of the principles involved in determining the question of contributory infringement of a combination patent in Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 301, 29 S. Ct. 495, 53 L. Ed. 805, and Id., 213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816, I do not feel that it is necessary for me to do more than to state that defendant's contentions as to the nonpatentability of all or part of the various separate elements making up plaintiff's combination, as to the existence and validity of the patents under which defendant makes its compressor equipment, and as to the possibility of noninfringing use of its equipment, are all disposed of adversely to defendant by the law as declared in those cases.

It follows from what had been said that plaintiff is entitled to the relief prayed. A decree accordingly may be prepared and an accounting as prayed ordered.