## LINK–BELT CO. et al. v. QUAKER OATS CO.
### No. 8718.

Circuit Court of Appeals, Eighth Circuit.
Sept. 13, 1930.

Rehearing Denied Nov. 1, 1930.

Donald M. Carter, of Chicago, Ill. (Francis W. Parker, Jr., Norman S. Parker, and Leslie M. Parker, all of Chicago, Ill., on the brief), for appellants.

L. A. Watson, of New York City (Watson, Bristol, Johnson & Leavenworth, of New York City, and O. N. Elliott, of Cedar Rapids, Iowa, on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and OTIS, District Judge.

STONE, Circuit Judge.

This is an action by a patentee and his licensee for infringement of patent No. 1,268,580, issued to Elwin H. Kidder on June 4, 1918. Claims 1, 2, 3, 4, 16, and 17 are involved. The defenses were lack of sufficient disclosure, aggregation of old elements lacking patentable novelty, anticipa-

tion, and noninfringement. The court found that claims 2, 3, 4, 16, and 17 were invalid as mere aggregations not constituting patentable novelty; that claim 1 was valid, but only when used in connection with an oscillating table substantially in form disclosed by an earlier Kidder patent (No. 1,176,966), and that claim 1 was not infringed. From a decree dismissing the action upon the merits, the plaintiffs bring this appeal.

This appeal presents (I) the validity and scope of the involved claims and (II) infringement.

### I. The Patent.

The patent is intended to furnish a speedy, practical, and economical device for unloading grain from railroad cars. Grain is shipped in ordinary box cars. Because the usual sliding doors on box cars would allow the bulk grain to escape, it is customary to nail boards on the inner sides of the car door jambs. These boards fit tightly together and rise slightly above the loading level of the grain. They are known as "grain doors." They are held in place by the nails and the pressure of the grain.

Usually, these cars of grain are unloaded at elevators which have a bin mouth so located near the track level that the grain can be conveyed from the car directly into the bin. Originally, the grain was scooped by laborers from the car into the bin. This was a slow and expensive method. It was conceived that this method could be improved upon if the car could be so tipped that the grain would pour out of it into the bin. Several inventors put this conception into practice by providing tiltable tables which included that portion of the railroad track immediately opposite the bin mouth. Such inventions included the earlier Kidder patent, No. 1,176,966; Dahl patent, No. 500,-997; Traves patent, No. 768,006; and others. However, although the car was tipped, the grain could not run out until the grain door was removed. The problem of Kidder, in the instant patent, was to remove this car door. According to the patent, "this invention relates to improvements in grain car door opening mechanism." His method was to provide a relatively rigid construction which would engage the grain door, so that when the car was tipped the weight of the loaded car would thrust the grain door inward away from the car door jambs.

It is obvious that this patent was intended for use and could be used only in conjunction with a tilting of the car. The trial court found claim 1 limited to use in conjunction with a tilting device substantially as set forth in the earlier Kidder patent (No. 1,176,966) covering a car tilter. We agree with such limitation. This claim is: "In mechanism of the character described, the combination with a member provided with rails and means for tilting a car laterally while on said rails and immovable with respect thereto, of a relatively stationary device located to one side of the car for forcing a side grain door of the car inwardly while the car is being tilted laterally toward said device."

This claim is for a "combination" consisting of a car tilter and of a grain door opener which co-operate in operation. The file wrapper accentuates this idea of "combination." The specifications state:

"The object of the present invention is to provide simple, strong and durable means, associated with a tiltable table, for automatically prying off the grain doors as the car is tilted to one side and, more specifically, the object of this invention is to provide such a means to cooperate with the car unloader described and claimed in the patent issued to me, No. 1,176,966, on March 28, 1916, to which reference is hereby made for a more detailed description of the car unloader proper.

"In the drawing forming a part of this specification, Figure 1 is a side elevation of a portion of a grain car shown in position on the car unloader disclosed in said Patent No. 1,176,966 and showing in connection therewith my improved door opening mechanism. Fig. 2 is a vertical, transverse sectional view of the car unloading device and door opening mechanism, the full lines illustrating the position of the car before it is tilted and the dotted lines indicating the relative positions of the door opening mechanism and car when the latter is tilted laterally. * * *

"In said drawing, 10 denotes an ordinary box car adapted for carrying grain, the same being run on to tracks 11 carried by an oscillatable cradle 12 which, in turn, is mounted on a longitudinally tiltable table 13, one of the side frame members or girders 14 being illustrated in Figs. 1 and 2. The arrangement and operation of the tiltable table and oscillatable cradle, together with the means for clamping the car thereon while being tilted, is fully described in my said Patent No. 1,176,966 and need not here be detailed."

Considering the above quotation from the specifications, the drawing (figure 2) which illustrates some of the operation under the Kidder car tilting patent, and the decided reference to this earlier patent, there is enough to justify the view of the trial court,

although the broad expressions in the claim and in the first part of the first sentence quoted above from the specifications leave this matter not free from doubt.

As to claims 2, 3, 4, 16, and 17, we are unable to agree that they are invalid. Claim 1 is the most general claim here involved. Claim 2 adds merely the feature of adjustability to differences in car widths. Claim 3 does the same as to differences in car floor levels. Claim 4 is a combination of the matters in claims 2 and 3. Claim 16 adds the thought of endwise tilting of the car (which has more to do with the earlier Kidder patent than with this door opener) and removal of the "entire" grain door. Claim 17 seems an attempted "catch all" claim to bring together the features particularized in claims 2, 3, 4, and 16. We think all of the claims involved are valid if claim 1 is.

Validity. Validity is challenged on the ground that this device is a mere aggregation. We think it rises above that. We think this attack should be denied because the elements of the combination (the tilting device and the grain door opening device) actively co-operate (Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 318, 320, 29 S. Ct. 495, 53 L. Ed. 805; Id., 213 U. S. 325, 335, 29 S. Ct. 503, 53 L. Ed. 816; Beecher Mfg. Co. v. Atwater Mfg. Co., 114 U. S. 523, 524, 5 S. Ct. 1007, 29 L. Ed. 232; Reckendorfer v. Faber, 92 U. S. 347, 357, 23 L. Ed. 719) and produce a new and useful result (Office Specialty Mfg. Co. v. Fenton Metallic Mfg. Co., 174 U. S. 492, 498, 19 S. Ct. 641, 43 L. Ed. 1058; Adams v. Bellaire Stamping Co., 141 U. S. 539, 542, 12 S. Ct. 66, 35 L. Ed. 849).

Various patents, publications, and considerable oral testimony was introduced to show anticipation. Undoubtedly, this evidence shows that others had earlier worked upon this problem of mechanically opening grain doors in conjunction with tilting of the car for unloading. However, the effect of such evidence is upon the scope of this patent rather than upon its validity. None of this evidence is sufficiently like the device here disclosed to prevent this device from being a patentable contribution to the art. It does have the effect of preventing this device being a pioneer and entitled to the broad scope of equivalents claimed for it. The evidence shows a field partially occupied when Kidder entered it and restricts his patent somewhat narrowly to the general construction he employs. But, thus restricted, the claims involved are held valid.

## II. Infringement.

This question of infringement involves a comparison of the structure described in the patent and that used by appellee. Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 50 S. Ct. 9, 74 L. Ed. 147. Both devices use the method of tilting the loaded car against a relatively rigid member which pries off the grain door as the car is tilting. Under the limitation of equivalent for this patent, it is not enough that the same result is reached by the same general method. The mechanical devices must be so similar that the one used by appellee is only colorably different from that covered by the patent. Judged by this standard, the two are dissimilar, and there is no infringement. The drawings and specifications of this patent show supports rising away from the outside of the tilting table frame to the level of the top thereof. On the tops of these supports are I beams with angle irons forming a guide or track for wheels which carry a built up rectangular frame which is adjustable laterally and also toward, or away from the car. This frame carries two upstanding channel irons connected at their tops by channels. These top channels are rigidly connected from their tops to the tilting table frame by diagonal braces. Pivotally connected to these top channels is a substantially horizontal frame work extending inwardly substantially to the side wall of the car to be opened. To a shaft on the car end of this frame is pivotally attached the grain door pry off member. This member is made up of two substantially vertical I beams with top and bottom connecting channels and various braces. These I beams have elongated slots permitting limited vertical movement. These beams are curved inwardly away from the car and at the lower ends have knife edges adapted to slip under the lower board of the grain door. The operation is as follows: The pry member is adjusted to and against the grain door so that the knife edges will engage before the tilting starts. When the car is tilted, the grain door is ripped off from the bottom to the top. The door opening device has no structural connection with the car tilting device except that it is rigidly attached to the outside of the rigid frame or shell containing the tilting device. Otherwise, their relation is merely that of juxtaposition. Outside of a slight movement of the pry member in its slots, the tilting of the car affects no movement of any part of the door opener. The entire door opener is a substantially rigid structure, except for such movements as are necessary to adjust the

pry member to the particular car door before the tilting starts.

Appellee's device is made up of three members, the pry off support, the pry off, and the strut which holds the pry off against the door. The support is made part of the tilting table and moves with that table and the car as the car is tilted. Near the upper ends of this support is attached the pry off with free swinging movement toward or away from the car door. The face of the pry off is studded with points to insure continued contact with the grain door. The back has longitudinal grooves, variously placed, to engage rollers on the end of the strut. The strut is a "mutton leg" shaped brace pivotally secured at the small (lower) end. The upper end is two sided with rollers at each of the three angle points. The operation is for the pry off to be placed against and adjusted to the car door. Then the strut is swung in place as a brace back of the pry off, at which time the lower roller of the strut face engages the pry off. As the car is tilted the pry off support (as a rigid attachment to the tilting device) moves toward the strut; the pry off swings inwardly of the car being pressed by the strut—the face of which travels, or changes, along the back of the pry off.

Thus it is seen that the two devices are differently constructed and their parts work differently as to each other. Although this is a minor consideration, the methods of adjustment to car floor heights and to car widths is entirely different in the two devices. Altogether, there is little similarity in the two devices except that they accomplish the same result through tilting of the loaded car.

The case will be remanded for the purpose of having the decree modified to declare claims 1, 2, 3, 4, 16, and 17 valid, and, when and as so modified, will stand affirmed.

VAN VALKENBURGH, Circuit Judge, concurs in the affirmance of the case upon the ground that appellants have failed to sustain the charge of infringement.