## WARREN TELECHRON CO. v. KODEL ELECTRIC & MFG. CO.

### No. 624.

District Court, S. D. Ohio, W. D.
Nov. 4, 1931.

Taft, Stettinius & Hollister, of Cincinnati, Ohio, and Fish, Richardson & Neave, of New York City, for plaintiff.

Allen & Allen, of Cincinnati, Ohio, and Samuel E. Darby, Jr., of New York City, for defendant.

NEVIN, District Judge.

This is a suit in equity for infringement and contributory infringement of claims 8 and 9 of Warren patent, No. 1,502,494, issued July 22, 1924, for time indicating apparatus. The patent in suit describes and claims a system of time distribution, called a "clock system," which makes use of the ordinary commercial alternating current produced by the majority of power companies. In order to do this it is necessary to have three things, an alternating current source, a device for translating the alternations of current into a visible time indication (a clock), and a means for turning the latent timing element in the current into a true time source, so that the clocks governed thereby will be accurate. The Warren means by which the alternating current may be utilized to tell time consists of a clock, called a "secondary" clock, which is driven by a small synchronous motor. Synchronous motor clocks were known before the invention of the patent in suit. It does not appear, however, from this record, that any such clock had ever been successfully used. The Warren master clock described in the patent is of the type known as Type B. Claims 8 and 9 in suit are directed to the entire system, and include a direct indicating master clock as an element of the system.

The patent describes and illustrates a system embracing a special kind of master clock, a generating plant with its distribution lines, and secondary clocks connected to the lines. The generating plant may be any power plant equipped to generate and distribute an alternating current of commercial frequency. Such plants usually are designed to operate on a frequency of sixty cycles per second. The speed of a synchronous motor is and must be directly proportional to the frequency of the current supplied to it. The secondary clocks of the patent in suit being powered by synchronous motors which, through suitable gearing, operate the hands of the clocks, the accuracy of the clocks will depend upon the frequency of the system upon which they are connected. If that frequency could be maintained invariably at the desired value, the secondary clocks would always be exactly right.

The master clock of the patented system consists of a synchronous motor which is connected to the power distribution circuit, the time indication of that motor being directly associated with the time indication of a standard spring or weight driven clockwork. In the Type A master clock, the standard clockwork drives a black clock hand, the synchronous motor a gold colored one. These two hands are mounted concentrically, and are arranged to rotate together when the integrated error in frequency is equal to zero. If the frequency becomes too high, the gold hand gradually draws away from the black hand, in advance of the latter, the distance or angle between the two being proportional to the accumulated error in frequency. On the contrary, if the frequency is too low, the gold hand will gradually fall behind the black hand. In either case the operator of the generators is able to tell at a glance whether there exists a time error in the system and, if so, the amount of that error, and can adjust the speed of the generators accordingly. In the Type B clock, the two associated mechanisms are connected, through differential gearing, with a single pointer, which is movable in front of a fixed scale. This pointer does not rotate, but only moves to one side or the other of the zero point of the scale, whenever the integrated frequency, and thus the time of the system, becomes fast or slow with respect to standard time. The function of each of the two forms of master clock is the same.

The only issues before the court are the validity and infringement of the system patent.

In its answer, among other things, defendant denies that it has committed or threatened to commit any of the alleged acts of infringement complained of, or that it has aided or encouraged the committing of any of said acts of infringement. It denies that plaintiff has expended large sums in making the inventions of the letters patent in suit useful to the public or profitable to itself, and it denies that there is any invention whatever involved in the said letters patent.

With respect to said patent No. 1,502,494, it denies specifically that by the sale of its clocks, such as No. 2835 and No. 3410, being Rose Marie Model 115 of the defendant company, it has contributed to the infringement of said letters patent. Defendant alleges that said claims 8 and 9 of said patent are invalid, alleging anticipation by prior patents, and because said claims failed to set forth distinctly and clearly the invention of Henry E. Warren, described in said letters patent.

The bill of complaint charged infringement also of Warren patent, No. 1,334,423, but, upon plaintiff's motion at the commencement of the trial, the bill as to this patent was dismissed.

The case came on for hearing before the court on the pleadings and the evidence, consisting of oral testimony and documentary proofs. Witnesses were called by the respective parties, whose testimony was transcribed in the record. Subsequently, the case was argued to the court by counsel, both orally and upon briefs.

The court has reviewed the record and the briefs of counsel and weighed carefully the arguments presented and reasons and authorities advanced by respective counsel in support of their respective claims. Upon a consideration of the whole case, the court makes the following:

### Findings of Fact.

1. The plaintiff is, and has been since the issuance thereof, the owner of the entire right, title, and interest in and to letters patent No. 1,502,494.

2. Both the Warren Type A and Type B master clocks include an indicator having a hand for indicating directly the departure of the alternations sent out by the central station from the time indicated by the master clock.

3. None of the prior art references in the record in this case discloses "a master clock and an indicator at the central station having a hand for indicating directly the departure of the alternations sent out by said central station from the time indicated by said master clock."

4. Warren Type A master clocks were in public use as early as April 1, 1918.

5. The defendant, the Kodel Electric & Manufacturing Company, since the issuance of patent No. 1,502,494, and within six years prior to the filing of the bill of complaint herein, made, used, and sold synchronous electric motor clocks.

6. The synchronous motor clocks made, used, and sold by the defendant constitute one element of the combination claimed in claims 8 and 9 of patent No. 1,502,494.

7. The electrical energy supplied to the defendant at its place of business in Cincinnati, since 1925, and prior to the filing of the bill of complaint herein, was regulated, as to frequency, by the use of Warren Type A master clocks.

8. The defendant, in its place of business in Cincinnati, operated synchronous electric motor clocks upon the electric energy so supplied.

9. Approximately 70 per cent. of the alternating current energy distributed in the United States is regulated by the use of Warren Type A and Type B master clocks, and such was the case prior to the institution of this suit.

10. The defendant had knowledge, prior to the institution of this suit, of the wide use of Warren Types A and B master clocks for regulation of frequency of alternating current.

11. The defendant sold its synchronous electric motor clocks with the knowledge and the intention that they would be operated upon electrical energy regulated by Warren Type A and Type B master clocks.

12. The public, including the defendant, had been, prior to the institution of this suit, given notice that synchronous electric motor clocks, when operated in accordance with patent No. 1,502,494, were protected by said patent.

13. The defendant, prior to the institution of this suit, had actual knowledge of patent No. 1,502,494 and of plaintiff's claims thereunder.

890

### Conclusions of Law.

1. Patent No. 1,502,494 is a continuation in part of Warren patent, No. 1,502,493, filed April 15, 1918, and claims 8 and 9 of patent No. 1,502,494 are entitled to a filing date of April 15, 1918, and therefore the public use of Warren Type A master clocks does not constitute a prior use so as to invalidate the patent in suit. Godfrey v. Eames, 68 U. S. (1 Wall.) 317, 17 L. Ed. 684; Victor Talking Machine Co. v. American Graphophone Co. (C. C. A.) 145 F. 350; Victor Talking Machine Co. v. Duplex Phonograph Co. (C. C.) 177 F. 248; Hayes-Young Tie Plate Co. v. St. Louis Transit Co. (C. C. A.) 137 F. 80; Union Carbide Co. v. American Carbide Co. (C. C.) 172 F. 120.

2. Claims 8 and 9 of patent No. 1,502,494 involve patentable invention over the prior art of record in this case.

3. Claims 8 and 9 of patent No. 1,502,494 are valid.

4. Defendant has directly infringed claims 8 and 9 of patent No. 1,502,494.

5. Defendant has contributed to the infringement of such patent by others. Thomson-Houston Electric Co. v. Ohio Brass Co., 80 F. 712 (C. C. A. 6); Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816.

6. Defendant is liable to the plaintiff for its direct infringement and for its contributory infringement.

The usual decree for injunction and accounting will be granted.