678

DIGITAL SENSORS, INC., a corporation,
Plaintiff,

v.

WEMS, INCORPORATED, a corporation,

and

Elco Corporation, a corporation,
Defendants.

No. 65–1049.

United States District Court,
C. D. California.

June 30, 1969.

Lyon & Lyon, Frank E. Mauritz, Los Angeles, Cal., Thomas M. Marshall, Anthony J. Casella, New York City, for plaintiff.

Miketta, Glenny, Poms & Smith, William Poms, Guy Porter Smith, Los Angeles, Cal., Smith & Wilson, A. Charles Wilson, Los Angeles, Cal., for defendant Wems, Incorporated.

Walton Eugene Tinsley, Harris, Kiech, Russell & Kern, Los Angeles, Cal., for defendant Elco Corporation.

## MEMORANDUM OPINION

WESTOVER, District Judge.

This is an action for willful and deliberate infringement, by defendants, Wems, Incorporated and Elco Corporation, of United States Letters Patent No. 3,155,809 and for misappropriation by defendant, Elco Corporation (hereinafter designated as "Elco") of information on the patented invention. Plaintiff seeks injunction, treble damages and counsel fees.

Defendants reply by contending that the patent is invalid for lack of invention; that plaintiff failed to comply with Title 35 U.S.C. § 112, and alleges file wrapper estoppel. In addition, defendants assert that in the event the court finds the patent valid, there has been no infringement.

Plaintiff Digital Sensors, Inc. (hereinafter "Digital") is a California corporation, having its principal place of business at Los Angeles, California. The parties' pleadings disclose that Elco is a Pennsylvania corporation, with an established place of business in Los Angeles, California; and Wems, Incorporated (designated herein as "Wems") is a California corporation.

Lee M. Griswold (herein mentioned as "Griswold"), the organizer of plaintiff corporation, has a degree in physics, having graduated from Cal-Tech. After graduation he became chief engineer at Helipot Corporation, a company associated with Beckman Instruments, chief engineer at Southwest Products; chief engineer at Hopkins Engineering, and manager of the west coast plant of Fairchild Corporation. His experience included work with welding apparatus for forming electrical connections.

In 1960 Griswold became interested in attaching electrical terminals to tape cables. As any school boy would know, an electric wire is usually insulated, and to connect an electric wire to another electric wire or to an instrument of some type, the insulation is stripped from the wire, and the two wires are, ordinarily, twisted together to form contact. In the event of attachment to an instrument or appliance, the wire is usually wrapped around or connected to a pole, post or rod. In the development of the electrical packaging industry, wires became smaller and smaller until, finally, a process was established by which very fragile,

small wires could be encased in a tape and insulated, thus making possible tape cables.

It readily became apparent that because of injury to the wires it was not feasible to strip the insulation from such a cable; it was very difficult to make a connection between one tape cable and another, or between a tape cable and a connection of any kind.

The problem of attaching terminals to tape cables was twofold—(1) to remove the insulation without damage to small and fragile wires and (2) to make the connection. To make a functional connection with such fragile wires by the old-fashioned method of twisting was not practicable; consequently, a process was devised to make the connections by soldering. Soldering, however, in itself was not satisfactory, and some other method of making a connection was desired.

In his experimentation over a period of years relative to making electrical connections, Griswold ascertained that the insulation around the small, fragile wires of tape cables could be removed by heat and, further, that after the insulation was removed by heating, connection could be made by spot-welding; and he built an apparatus to carry out the welding of the tape cables to terminals or terminations.

Defendant Elco, a large manufacturer, was also interested in the terminations of tape cables. Representatives of Elco learned that Griswold was making termination connections of tape cables by a welding apparatus; negotiations were entered into between Elco and Griswold whereby Elco proposed to purchase fifty-one percent of the stock of plaintiff corporation for the sum of $35,000.00; and in the light of such proposal and negotiations Griswold disclosed to Elco's representative certain of the Griswold terminations processes.

The purchase and sale of the stock was not consummated, however, because Elco proposed that the $35,000.00 be not paid to Griswold personally but rather that the sum be used as capital and if, in the future, additional fund was required, it should be provided by Griswold and Elco according to their respective stock interests. Griswold, consequently, called off all negotiations relative to purchase by Elco of an interest in plaintiff corporation.

In the course of business through the years Elco obtained contracts from various manufacturers to make terminations of tape cables, farming some of its orders out to plaintiff corporation. Plaintiff made the terminations, returned the completed product to Elco, and Elco then forwarded the items to its customers. During the Elco-Griswold negotiations regarding the purchase of fifty-one percent of plaintiff corporation stock, Mr. Benjamin Fox, president of Elco, wrote two letters to Alex Paul (who had been conducting the stock purchase negotiations with Griswold)—one letter on December 5, 1961 and the other on December 12, 1961. In the letter of December 5, he states as follows:

"What I would like you to do is go over there as soon as you receive this letter and get any information you possibly can on the operation of Digital Sensors, such as whether they have equipment, whether they can weld successfully and repeatedly, whether they can weld tape cable to tape cable without removing the insulation and whether they can weld tape cable to a card edge connector successfully as we discussed when I saw you last."

And in the letter dated December 12, 1961, Mr. Fox instructed Mr. Paul as follows:

" * * *, in order for us to pay $35,000 to him to take over his business, we must have more 'tachlis' than just the few samples he delivered. I agree with you that if he has anything on the ball, we should not let him out of our hands. Therefore, try to keep him interested. I will see you when you get here but in the interim see if you can get demonstrations and samples of all of whatever he does

with his weldings and his terminals. We will discuss this further when you get here and make up our minds about what we are going to do with him."

Defendants assert there was no invention. Defendants say and plaintiff admits that all the elements used by Mr. Griswold in his invention were well-known in the prior art; and defendants contend that all Griswold did was combine them together. Defendants contend further that in early 1961 the Griswold invention would have been obvious to anyone of ordinary skill in the art.

We start with the proposition that the patent in issue is a valid patent. The Patent Act of 1952 (35 U.S.C. § 282) provides:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

In Mumm v. Jacob E. Decker & Sons, 301 U.S. 168 at 171, 57 S.Ct. 675 at 676, 81 L.Ed. 983 the Supreme Court said:

" * * *. As this Court said in Cantrell v. Wallick, 117 U.S. 689, 695, 696, 6 S.Ct. 970, 974, 29 L.Ed. 1017: 'For the grant of letters patent is *prima facie* evidence that the patentee is the first inventor of the device described in the letters patent, and of its novelty. [Citations].' The issue of the patent is enough to show, until the contrary appears, that all the conditions under which a discovery is patentable in accordance with the statutes have been met. Hence, the burden of proving want of novelty is upon him who avers it. Walker on Patents, § 116. Not only is the burden to make good this defense upon the party setting it up, but his burden is a heavy one, as it has been held that 'every reasonable doubt should be resolved against him.' * * *."

Defendants say that Griswold's invention has been anticipated by other patents. We have examined the patents in which defendants claim the Griswold patent has been anticipated. The defense of anticipation is strictly technical.

" * * * Unless all of the same elements are found in exactly the same situation and united in the same way to perform the identical function in a prior pleaded patent, there is no anticipation." Stauffer v. Slenderella, etc., 9 Cir., 254 F.2d 127, 128.

From the evidence adduced at trial, the court finds against defendants on the alleged ground of anticipation.

Defendants further assert that what Griswold did was obvious early in 1961 to anyone of ordinary skill in the art.

It is given to only a few to be real inventors. After the trial has been broken, there are many followers on the trail who hope to benefit from the invention. When the followers are challenged, the customary reply is that the invention would have been obvious to anyone of ordinary skill in the art.

The court feels defendants have demonstrated that what Griswold did was not obvious to anyone of ordinary skill in the art. Had it been obvious, why then did defendants' representatives attempt to discover just what plaintiff was doing and how it was done? And why did Benjamin Fox, Elco's president, write the letters hereinabove quoted.

The court finds that Griswold did make a contribution to the art of making electrical connections to tape cables and that his contribution was not, as of early 1961, obvious to men or ordinary skill in the art.

It took the art and Griswold more than ten years after development of tape cable to put the elements together and create a new welding apparatus and the technique to form weld connections. While it is true that Griswold used well-known art, he nevertheless combined and used it in such manner as to produce a new and useful result. This, Griswold contends, brings him within the rule as set out in Williams Mfg. Co. v. United Shoe Mach. Corp., 316 U.S. 364, 62 S.Ct. 1179, 8C L.Ed. 1537 and in Leeds & Catlin Co. v. Victor Talking

Mach. (No. 2), 213 U.S. 325, 29 S.Ct. 503, 53 L.Ed. 816.

As hereinbefore stated, Griswold discovered that insulation could be removed by heat and welding accomplished. Although the technique developed by Griswold was called "welding through insulation" the term was, nevertheless, a misnomer, as there never was welding through insulation. Insulation had to be removed from the tape cable before a weld could be accomplished, and Griswold ascertained that the insulation could be removed by heat without injury to the fragile wires within the insulation. Upon application of heat, the insulation was pushed aside and the wire and connectors were allowed to contact, minus insulation; then the weld was perfected. Griswold took a common soldering iron; he removed the soldering tips, inserted in place thereof electrodes; he carried two sources of power to his apparatus (1) to heat the electrodes and (2) to make the weld. Certainly what Griswold did was to produce a new and useful result and, as a consequence, the process was patentable.

The court finds no merit in defendants' contention that the Griswold patent was invalid for failure to comply with Title 35 U.S.C. § 112 and there was no file wrapper estoppel.

After break-off of negotiations between plaintiff and Elco to purchase fifty-one percent of plaintiff's stock, defendant Elco went to Wems, gave Wems information relative to the Griswold process and requested Wems to make an apparatus which would "weld through insulation." As a result of the information supplied by Elco to Wems and through experiments of its own, Wems produced an apparatus very similar to the Griswold apparatus and which would perform the same type of operation. Six of the apparatuses were manufactured by Wems and sold to Elco, one of which was sold by Elco to the Navy.

Defendants contend that the apparatus as manufactured by Wems and used by Elco did not infringe the Griswold pat-

ent. Again, after examination of the different items in question, observation of the result of their operation, the court comes to the conclusion that the apparatus manufactured by Wems for Elco and used by Elco did infringe the Griswold patent.

At pretrial it was determined that evidence of damages and attorney fees would be postponed, pending disposition by the court at trial of the issue of liability.

The court finds as follows:

1. That the Griswold patent is valid.

2. That defendants have infringed the Griswold patent.

3. That plaintiff's request for injunction in plaintiff's complaint should be granted.

4. That the question of damages and of attorney fees will be determined at a subsequent hearing.

Counsel for plaintiff shall prepare findings and judgment in conformity with this memorandum for presentation to the court on or before July 31, 1969.