## GEORGE CLOSE CO. v. IDEAL WRAPPING MACH. CO. et al.

Circuit Court of Appeals, First Circuit.
November 27, 1928.

No. 2286.

Frederick L. Emery, of Boston, Mass., and Lucius E. Varney, of New York City (Emery, Booth, Janney & Varney, of Boston, Mass., on the brief), for appellant.

Charles W. Hills, Sr., of Chicago, Ill. (George K. Woodworth, of Boston, Mass.,

534

and Alexander C. Mabee and Charles W. Hills, Jr., both of Chicago, Ill., on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. In this patent-infringement suit, no question is made as to the validity of the patents nor as to the acts of the defendant relied upon as infringement. The single question is whether those acts constitute infringement.

■ The patents cover two elaborate combination machines, both issued December 23, 1913, so successful as to be practically a necessity in the candy-manufacturing business. No. 1,082,331, with 89 claims, covers a candy-cutting machine; No. 1,082,463, a wrapping machine, with 119 claims. Ten claims in each patent are alleged to be infringed.

The present problem does not call for a detailed description either of the patents or of the machines. The brief of appellant's counsel is so clear and so frank in its statement of their contention as to make it almost unnecessary to refer to the record or to the brief of opposing counsel. Main or essential parts of the machines are a cutting table and a wrapping wheel. The cutting table is a horizontal, circular disc, equipped with knives set at regular intervals, revolved by a step-by-step mechanism. Candy in plastic form for caramels is fed upon this table, and there, as it revolves, is cut by the knives into specified lengths, carried over to the wrapping device, there to be taken up by pockets and wrapped ready for market. The machines are guaranteed to cut and wrap 200 caramels a minute. Obviously, the length of the caramels depends upon the distance between the knives on the cutting table. To adapt a machine to a larger caramel, the number of knives must be lessened, the step-by-step mechanism changed for longer steps, and the wrapping devices also to a substantial degree reconstructed.

The plaintiff patent-owner manufactured each machine to cut and wrap caramels of one size only—stated on the name-plate of the machine, together with reference to the patents. The defendant's machines were for inch squares, one-fourth to five-eighths of an inch thick.

On February 6, 1922, the patent owner granted to the other plaintiff, now known as Fair Play Caramels, Inc., "the exclusive right to use the Special Model of Caramel Wrapping Machine made by the party of the first part for cutting and wrapping pieces 1¼

inches long by 1 inch wide by ¼ inch to ¾ inch thick." The larger caramels thus cut and wrapped by Fair Play Caramels, Inc., were sold two for one cent; the smaller caramels, produced by the machines previously bought by the defendant, sold three for one cent. It is contended that the trade in the smaller ones was being ruined by the competition of the larger two for a cent caramels. Consequently, the defendant applied to the plaintiff patent-owner to furnish the parts necessary to change the defendant's machines over into machines for cutting and wrapping the larger caramels. This application was refused. The defendant thereupon employed a machinist to reconstruct its seven machines so as to cut and wrap the larger caramels.

This reconstruction involved the substitution of a cutting wheel, with 18 knives instead of 24; and, as noted above, the step-by-step mechanism, the pockets in the wrapping device, and other essential parts of the machine, had either to be built over, or new and different parts substituted for the parts in the machines when purchased. The question is whether such reconstruction was infringement. We agree with the conclusion of the court below that it was.

■ Defendant's counsel have presented their views in a learned and interesting brief, devoid of any attempt to dodge the real issue. They frankly say that this is not a case of repair or of replacement of some broken or short-lived part, like the knives in a planing mill. Wilson v. Rousseau, 4 How. 646, 11 L. Ed. 1141; Wilson v. Simpson, 9 How. 109, 13 L. Ed. 66; F. F. Slocomb & Co. v. A. C. Layman Mach. Co. (D. C.) 227 F. 94, 98; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500. But they contend that one who becomes the absolute owner (as this defendant did) of a patented machine, by outright purchase from the owner of the patent, may reconstruct that machine by adding or changing essential parts of the patented combination, so as to produce a new result or product. It is not, and cannot be, contended that such reconstruction does not destroy the identity of the machine purchased. Plainly it does; the reconstructed machine is, in the candy-manufacturing art, a new or different machine (producing a different result) from that manufactured and sold by the patent owner. Walker, Patents (5th Ed.) § 302a. We can see nothing in the patent statute, as construed by the Supreme Court, or by any other court, to justify the contention that the defendant's acts did not

constitute infringement. The defendant has made, and is using, the invention, in a machine in substantial part made by it—not purchased from the owner of the patents. Of course, the machine purchased passed out of the limits of the patent monopoly. Chaffee v. Boston Belting Co., 22 How. 217, 16 L. Ed. 240; Keeler v. Standard Folding Bed Co., 157 U. S. 659, 15 S. Ct. 738, 39 L. Ed. 848. And the purchaser had the right to use it and to repair it, but not to reconstruct it so as to change the identity of the machine, as this defendant did.

Careful analysis of the ingenious argument of defendant's learned and experienced counsel leads to the conclusion that their error is grounded on misapprehension of the limits of the doctrine laid down by the Supreme Court in Motion Picture Co. v. Universal Film Co., 243 U. S. 502, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959. In that case, overruling the majority opinion in Henry v. Dick Co., 224 U. S. 1, 32 S. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880, it was settled that the patent monopoly cannot be stretched to cover collateral agreements, like resale price or as to the materials usable with the patented invention. The reverse doctrine, laid down 20 years before by Judge Lurton in the Button Fastener Case (C. C. A.) 77 F. 288, 35 L. R. A. 728, and repeated by Mr. Justice Lurton in the Dick Case, 224 U. S. 1, 32 S. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880, was finally rejected.

The gist of the decision in the Motion Picture Case is that the words of the statute are to be construed as meaning exactly, and no more than, what they say; and that (whatever may be the validity or invalidity of collateral agreements as to resale price or the use or nonuse with the patented article of specified materials), such collateral agreements cannot be enforced, in the Federal courts, as patent infringements. To infringe a patent, there must be a breach of the right to make, to use, or to vend. The owner may entirely suppress his invention. Paper Bag Case, 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122. He may grant strictly limited rights in his franchise. He may manufacture and sell machines embodying his invention, and such sale carries the right to use the invention in the machines sold; but that right does not (as the defendant's counsel now contend) give to the purchaser the right to rebuild the purchased machines into other machines embodying the patent invention.

Undoubtedly, the Motion Picture decision (cf. also Boston Store of Chicago v. Am.

Graph. Co., 246 U. S. 8, 38 S. Ct. 257, 62 L. Ed. 551, Ann. Cas. 1918C, 447) narrowed the field of patent-infringement suits as maintained (in the lower courts, at least) from the time of the Button-Fastener decision (1896). But this decision did not cut down the fair meaning and operation of the three words, "make, use, and vend" in the patents statute. The changed view of the Supreme Court, as to the relation of collateral agreements to the scope of the patent monopoly, involved no change in the law relative to reconstruction and repair. What was "to make," within the meaning of the patent law before the Motion Picture decision, is "to make" within the law since that decision.

The Supreme Court has so recently and so exhaustively dealt with the nature and extent of rights under the patent law that it would be inappropriate for this court to load down what we regard as a plain case with an elaborate citation and discussion of the controlling and guiding authorities, most of which are cited in the Dick Case, supra, the Motion Picture Case, supra, and the American Graphophone Case, supra.

The decree of the District Court is affirmed, with costs to the appellees.