## CINEMA PATENTS CO., Inc., v. COLUMBIA PICTURES CORPORATION et al.*
### No. 6852.

Circuit Court of Appeals, Ninth Circuit.
Dec. 19, 1932.

*Rehearing denied February 6, 1933.

Herbert A. Huebner, of New York City,. and Ward D. Foster, of Los Angeles, Cal., for appellant.

Loyd Wright, Charles E. Millikan, and. Frank L. A. Graham, all of Los Angeles, Cal., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and CAVANAH,. District Judge.

CAVANAH, District Judge:

This is a suit charging defendants with. infringement of two patents covering appa-

ratus for processing picture film. The charge is particularly directed to the altering by defendants of a machine owned by the plaintiff. The machines were leased to and placed in operation in the Wm. Horsley Film Laboratories, Inc., in Hollywood, under a lease agreement, which subsequently plaintiff acquired ownership of and of the patents therein named. A suit is now pending in the Superior Court of California for an accounting to plaintiff for all photographic film developed, processed, or treated by the machines and to declare the lease agreement terminated. The defendants urged two defenses: First, the lease and license agreement under which they seek to justify their acts complained of; and, second, the pendency of the suit in the state court is a bar to the present suit. An order of reference to a special master for trial was made, who concluded that the patents are valid in law and belong to the plaintiff, and were infringed by the defendants' use of the altered developing machine. The lower court refused to sustain the recommendations of the master on the question of infringement, and entered a decree dismissing the bill, and from which this appeal is taken.

█ The question of infringement involves the process used and the type of film developed, and whether the defendants by adding to the machine an additional developing tank, together with other parts necessary to carry the film through the tank, and further adopting it to the development of negative film, have infringed the patents in suit. The pivotal question is: Did the defendants in altering the developing machine and thereafter using it to develop negative film go beyond the scope of the lease agreement? The machines at the time of the execution of the lease were equipped with tanks suited only to the development of positive film. The lease recites that: "The party of the fourth part (the defendants) shall have the right to use, operate and maintain the said machines, * * * in treating, processing and developing photographic films, and the parties of the first, second and third part agree to lease, and do hereby lease to the said party of the fourth part, the said machines * * * for the consideration hereinafter set forth."

It is further provided in the lease that the two machines "shall be and remain the property of the said parties of the first, second and third part, and that the said fourth party shall have no title or interest therein other than the right to the use thereof. * * * *"

It is clear from these provisions of the lease that the only right granted to the defendants is the right to use the machines which the plaintiff had then designed, built, and installed in the Wm. Horsley Laboratories for developing only positive films. The contract or lease refers to the use of two machines, and the lease and license are coextensive in that respect. The license clause in the contract is restricted to the use, as it provides: "Hereby grant to the party of the fourth part the right, liberty and license to use two machines for treating, processing and developing photographic films for the full term of any and all of the aforesaid patents * * * and all other patents that may be granted * * * on the aforesaid patent applications or for any improvements thereon, for the consideration, period of time and under the conditions hereinafter expressed."

█ There is quite a difference between the positive machine and the altered negative machine, as the former has a capacity of 265 feet of 35 millimeter film in the developing tank, while the latter may contain twice as much, 530 feet, at one time. Since the change, all of the defendants' picture negatives have been developed in the negative machine, as they have built on an extra developing tank, which brought to the machine as a whole a new function. This act amounted to a "manufacture," and the right to manufacture is not granted by the lease contract. The court below interpreted the license feature of the agreement as follows: "Authorized the use of two machines in the processing of films in any way so long as that use was within the description of the invention as disclosed by the patents which were referred to in the agreement," which ignores the express provisions of the contract relating to the building, installing and leasing of the machines, as the right to manufacture the machines was retained by the lessors, and the only right granted by the license clause of the lease contract is to use two particular machines. The lease does not authorize defendants to exercise all of the rights granted to plaintiff under the patents, as it only refers to the terms of the patents as defining the duration of the lease contract and nothing more, and we find in paragraph 2 of the lease contract that: "The party of the first part, under the direction of and with the assistance of the said party of the second part, agrees to construct and install within the laboratory of the party of the fourth part, two machines for treating, processing and developing photographic films, together with the appurtenances thereof and equipment and apparatus,

in connection therewith, and the parties of the first, second and third part agree to lease to the party of the fourth part the said two machines for developing, processing and treating photographic films and the apparatus and equipment appurtenant thereto for the rental and on the terms and conditions hereinafter contained."

The expression, used in paragraphs 6 and 14 of the agreement, of "license" is limited to the right of use when the agreement is analyzed as a whole. To illustrate, in paragraph 6 where it is stated, "in consideration of the license above granted," we do not find it stated anywhere in the agreement, before that clause, where the expression of "license" is not limited to the right to use and operate the machines, and in paragraph 14 it specifically limits the expression "license" to "the right to the use thereof." Therefore it cannot correctly be urged that an express license to use the patented machines implies the right to make changes or additions to the machines, particularly where the right granted to the lessees is specifically limited to the use thereof, and the right to manufacture is specifically retained by the patent owner—as it is in this lease agreement. This rule of construction is recognized by the authorities, and by the Eighth Circuit Court of Appeals where it is said: "It is, we think, the general rule in patent cases that a limited license conveys only the rights defined therein, and that if the licensee makes any other or different use, either as to time or place, than that authorized by the license, he becomes an infringer, and his limited license is no justification." St. Louis Street F. M. Co. v. Sanitary Street F. M. Co., 178 F. 923, 927; Miller Hatcheries v. Buckeye Incubator Co. (C. C. A. 8) 41 F.(2d) 619; George Close Co. v. Ideal Wrapping Mach. Co. (C. C. A. 1) 29 F.(2d) 533.

In affirming the case of Leeds & Catlin Co. v. Victor Talking Mach. Co. (C. C. A. 2) 154 F. 58, 23 L. R. A. (N. S.) 1027, the Supreme Court (213 U. S. 325, 29 S. Ct. 503, 507, 53 L. Ed. 816), said: "The license granted to a purchaser of a patented combination is to preserve its fitness for use so far as it may be affected by wear or breakage. Beyond this there is no license."

There is no dispute as to what acts were done by the defendants in the present case, for the change made by the lessees increased the effectiveness of the machine and a different kind of film from that which the machine had produced when it left the hands of

lessors and was installed by them, and accepted by and used by lessees for several years.

The contract here made covering machines capable of developing only positive films requires the lessees to pay a small royalty based on a single rate, and, under the established practice of the plaintiff, an additional income is derived from charging a higher royalty for the use of negative developing machines. The acts of defendants, if countenanced, would deprive the plaintiff of the royalty it is entitled to for the use of negative developing machines, or, in other words, the defendants would be receiving the use of the machines at a smaller royalty than they should be required to pay for using machines designed for the developing of negative films.

Applying the principle announced to the present case, it is clear that the facts present a change in the machine which consists of adding an additional unit which permits the development of a different kind of film and with a greatly increased capacity, not authorized by the lease agreement. This we think clearly constituted infringement.

With respect to the second question that, on account of a suit having been first brought in the state court by the plaintiff against one of the defendants, plaintiff has made its election of remedies and cannot now maintain the present suit for patent infringement, we find that the way in which the question is presented is that defendants in their answers have pleaded that about May 3, 1930, an action was filed in the state court by the plaintiff against Wm. Horsley Film Laboratories, Inc., one of the defendants, wherein plaintiff alleged that it was the owner of the contract in question, together with the machines and royalties provided for in the agreement.

The relief sought in the action in the state court seeks an accounting for the films developed by the machines, that the license agreement be terminated, that the machines be returned to the plaintiff, and enjoining the defendants from operating them. The two suits are not inconsistent, as the present suit involves primarily the question of patent infringement and an accounting, while the one in the state court involves the termination of the agreement, the return of the machines, an accounting, and enjoining the defendants from using the same. Therefore it is apparent that an election of remedies could not occur. The federal courts have exclusive jurisdiction to determine patent infringement,

and its jurisdiction is not questioned in this case.

The decree of the trial court holding that the patents were not infringed is reversed, with directions to enter a decree for an accounting and enjoining the defendants from further infringement of said patents in accordance with the views here expressed.

Reversed.