Alfred **LEUSCHNER**, an Individual, Doing Business Under the Name and Style of Al's Machine Shop; and Wilbur-Ellis Company, a Corporation, Appellants,

v.

Max K. **KUTHER**, an Individual, Appellee.

No. 17756.

United States Court of Appeals Ninth Circuit.

Jan. 29, 1963.

---

Naylor & Neal, James M. Naylor, and Frank A. Neal, San Francisco, Cal., for appellants.

Mellin, Hanscom & Hursh, Oscar A. Mellin and Carlisle M. Moore, San Francisco, Cal., for appellee.

Before JERTBERG and MERRILL, Circuit Judges, and PENCE, District Judge.

PENCE, District Judge.

Appellee, Kuther (plaintiff below), was the owner of a patented fish canning machine. All machines manufactured with the authority of the patentee were made solely to pack fish into one-pound size cans, 3 inches in diameter and 4-11/16ths inches high. The four machines involved here, when new, sold for between $8,000 to $10,000, and appellee was paid a royalty of $1,500 per machine. The machines were designed to pack small fish such as sardines, and because of their construction and mode of operation would be useless to pack large fish such as salmon. As the patented machines were manufactured, whole small fish were delivered to small, open-top, U-shaped fish receivers in such a manner that the fish headed half in one direction and half in the other, so that the fish would be interlaced when packed in the can. A compressor moved into the U-shaped fish receiver so that the interlaced fish formed a cylinder having a diameter slightly less than the can into which they were to be packed. A plunger then forced the cylinder of fish from the receiver into the can.

Wishing to can smaller sardines into smaller cans than those for which the patented machines had been built, Wilbur-Ellis Company, one of the appellants (and a defendant below), bought four secondhand machines. Three of the four machines had been inoperative since 1952 and had been left standing in an old packing plant until 1958, uncared for,

and exposed to rain and salt air, so that they had become corroded and frozen solid to the extent that they were inoperable when purchased. The fourth machine as originally built was the same as the three above described. All the machines as built were not adjustable, but were designed to pack fish into the one-pound size cans, exclusively.

Wilbur-Ellis first approached Kuther to rebuild the machines for packing half-pound cans, but he had replied: "Well, it's too much work, and it is no use for me to fool around." So, thereafter, without securing Kuther's consent, Wilbur-Ellis hired Leuschner, another appellant (and a defendant below), to put the machines in shape to can fish in the can size desired by Wilbur-Ellis.

To do this, Leuschner had to clean and sandblast the corrosion from the machines to make them operable, and replace certain can supports which, although normally as long-lived as the machine, had rusted away. Certain plungers, originally designed of a diameter for one pound cans, were so corroded that they could be rendered operable only if they were replaced or were ground down, which grinding would reduce their diameter so that the plungers would no longer be operable for their original purpose, i. e., to force the cylinder of fish into one pound cans. Under the direction of Wilbur-Ellis, Leuschner ground down the plungers and fitted inserts into certain pockets and compressors to change and reduce their original size so that they could be used for packing smaller cans. He also changed certain other parts of the machine, including the guide rails for the cans after they were filled with fish, so that the rails would handle only five ounce cans, which were but $2\frac{1}{8}$ inches in diameter and $3\frac{1}{2}$ inches long.

Leuschner, on instructions of Wilbur-Ellis, altogether made six changes in the thirty-five elements which, combined together, made up the patented fish canning machine. As to the rest of the different elements of the machine, no changes were made as to either size, position or replacement. Of the six changes, the can

tracks, plungers, receivers and compressors were rusted or corroded to the point that their replacement was called for if the machines were to be made operable as originally built, i. e., to pack one pound cans. Instead of replacement with parts of the original size, each such element was reduced in size or so changed that the machine could thereafter be used only in packing the five-ounce size can desired by Wilbur-Ellis.

Kuther, as owner of the patent monopoly, thereafter brought suits for infringement against Wilbur-Ellis, as well as Leuschner. The District Court in a well-reasoned opinion found such infringement, and gave judgment for Kuther (and against both defendants, jointly and severally) for $6,000, i. e., $1,500 per machine—that being the royalty he normally received from the sale of machines manufactured under license by him.

The arbitrary refusal of Kuther to rebuild the machines gave Wilbur-Ellis no right to do such rebuilding·themselves. It is well settled that it is the exclusive privilege of the owner of a patent monopoly to permit the use of his patent or deliberately keep his invention out of use during the life of the patent, regardless of his motive. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122.

As was first stated in Wilson v. Simpson, 9 How. 109, 123, 13 L.Ed. 66 (1850), it is the use of the whole patented combination which a purchaser buys, and repair or replacement of a worn-out, damaged or destroyed part which renders the combination inoperable is but an exercise of the right "to give duration to that which he owns, or has a right to use as a whole", and it is permissible to restore the machine to the original use for which it was bought. This rule was reaffirmed in Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961), the Court holding that the patentee's monopoly cannot and does not prevent those to whom the patented machine is sold from reconditioning articles worn by use unless in fact they make a new article

(p. 343, 81 S.Ct. p. 603). "In order to call the monopoly, conferred by the patent grant, into play for a second time, it must, indeed, be a second creation of the patented entity * * *." (p. 346, 81 S.Ct. p. 604).

Weighed on the above scales, the work performed by the appellants on the machines was not simply "maintenance of the 'use of the whole' of the patented combination through replacement (and repair) of a spent, unpatented element", but was such "a true reconstruction of the entity as to 'in fact make a new article'." Aro Mfg. Co. v. Convertible Top Replacement Co., supra, 346, 81 S. Ct. 604. The record is crystal clear that appellants made no attempt simply to replace worn-out parts in order to make the machines operate as originally manufactured. They deliberately modified and changed the machines in six different particulars in order to make each machine fit Wilbur-Ellis' own specific purposes, viz., the packing of five ounce rather than one pound cans of fish. Granting that appellants had the right to repair and patch each part of the fish canning machines which they bought and paid for to make the machines last as long as possible, (Cf. Aro, etc. 357, 81 S. Ct. 610), such right did not entitle them to use that patented combination in making over the machines into fundamentally different machines from those which Wilbur-Ellis purchased, i. e., to "make a new article."

The appellants went beyond the limits of preservation of a machine's fitness as laid out in Leeds & Catlin Co. v. Victor Talking Machine Co. (No. 2), 213 U.S. 325, 336, 29 S.Ct. 503, 507, 53 L.Ed. 816 viz.: "The license granted to a purchaser of a patented combination is to preserve its fitness for use so far as it may be affected by wear or breakage. Beyond this there is no license."

Appellants insist, however, that theirs was not an unauthorized reconstruction of the machines, but rather that, in the course of exercising their right of repair (without making any changes in the operating procedure of the machine),

they did but modify each machine to pack a smaller size can, and that change in size alone does not normally constitute reconstruction. In justification of their position, they rely upon Hess-Bright Mfg. Co. v. Bearings Co. of Pennsylvania, 271 F. 350, (D.Ct.Pa.1921), and Tabulating Machine Company v. Durand, (Sup.Ct. D.C.1910) 150 Official Gazette. Appellants urge that, as was done in the Hess-Bright case, supra, in order to render the plungers operable, it was necessary to grind them down to a smaller diameter, thereby making it impossible for the machines to pack the one pound can, and rendering the machines usable only for handling the small, five ounce cans, and that similarly, the receivers and compressors could be salvaged only by fitting inserts which would minimize their original size. Appellants also insist that since the only change in the patented combination, resulting from their "repairs", pertain solely to size of the can which the machine would ultimately handle, they were authorized to do so under authority of the statement made in Tabulating Machine, etc., supra: "I don't understand * * * that invention ever resides in the size of a machine alone."

The Hess-Bright and Tabulating Machine cases were each single judge decisions, and in each, the line of demarcation between repairs and making over was very thin. The result in each was reached on the peculiar set of facts presented. Whatever slight virility the dicta in each case, viz., that the identity of the invention is not lost by a change in size, may have had, it has been emasculated by George Close Co. v. Ideal Wrapping Mach. Co., 29 F.2d 533, 535 (C.A.1, 1928), Miller Hatcheries, Inc. v. Buckeye Incubator Co., 41 F.2d 619 (C.A.8, 1930) and Cinema Patents Co., Inc. v. Columbia Pictures Corporation, 62 F.2d 310 (C.A. 9, 1932). Cf. also National Cash Register Co. v. Grobet, 153 F. 905 (C.A.2, 1907). The rule (as stated in George Close Co. v. Ideal Wrapping Mach. Co., supra, dealing solely with the problem of a change in size of a patented combination) that the sale of a machine embodying the invention, while carrying the right to use the invention, does not give to the purchaser the right to rebuild the purchased machine into other machines embodying the patent invention, is inferentially affirmed by Aro, etc., supra.

Here the appellants did not simply repair Kuther's patented machines, they reconstructed, rebuilt and modified each to suit Wilbur-Ellis' desires. In so doing, they embodied therein Kuther's patented combination, thus clearly infringing upon Kuther's patent monopoly.

The judgment of the District Court is affirmed.

MERRILL, Circuit Judge (dissenting).

I cannot agree that the fact that these machines as restored wound up operating on five ounce cans instead of one pound cans has, apart from other considerations, resulted in a destruction of their original identity and the creation of new machines. The question to me should be whether the alterations necessary in order to accomplish this result were of such a character as to amount to reconstruction under recognized tests such as those discussed in Aro Manufacturing Company v. Convertible Top Replacement Company, 1961, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592.

The district court has not found on these matters. Its consideration was limited to the question, as stated in its opinion, "[W]hether it is infringement for the possessor of a patented combination, designed to pack one pound cans only, to so change essential parts that the machine will pack five ounce cans only."

Here it would appear that the replacements did not newly create a patented combination, but that they simply bore on the useful capacity of the old combination on which royalty had already been paid—the very combination which by sale had been released from monopoly.

It is apparent from the opinion of the district court that it was concerned with the patentee's right to refrain from manufacture of machines to handle other

sizes or for other purposes. If the patentee has commercial concern with the sort of use to which the machine (or combination) is to be put, he can and should protect himself by the commercial arrangement by which the patent is released. If released by sale, the combination sold should, in my view, be regarded as released in all its full usefulness until that usefulness is spent.

For these reasons, I would reverse.