**260**

William L. PAUL, Sr., individually and as a member of the class of the Stikine Tribal Community of Tlingit and Haida Indians, Appellant,

v.

Norman NAUSKA, Val Ferguson, Martha Bradley, William E. Smith, Edith Stevens and William Willard, Appellees.

No. 455.

Supreme Court of Alaska.

Sept. 17, 1964.

Frederick Paul, Seattle, for appellant.

No appearance for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The principal question presented on the appeal in this case is whether the superior court was correct in holding that it had no jurisdiction to decide a supplemental issue growing out of a decision rendered by the Court of Claims of the United States in favor of the Stikine Tribal Community of the Tlingit and Haida Indians of Alaska.

The appellant, William L. Paul, Sr., appeared as plaintiff below for himself individually and as a member of the class of Alaska Indians mentioned. In his complaint he asked the superior court to require the defendants, who are named as appellees in the proceedings here, to show cause why they should not be restrained and temporarily and permanently enjoined "from representing the Stikine Tribal Community in any wise, and in particular at the Wrangell Convention of November 8, 1963."

The factual background of the issue raised is as follows: By the Act of June 19, 1935, 49 Stat. 388 (1936), Congress provided special jurisdictional legislation whereby the Tlingit and Haida Indians of Alaska were authorized to sue the United States in the Court of Claims for the recovery of just compensation for lands and other tribal or community property rights taken from them by the United States. Section seven of the Act provided:

"That Tlingit and Haida Indians of Alaska who are entitled to share in any

judgment or appropriation made to pay said claim or claims shall consist of all persons of Tlingit or Haida blood, living in or belonging to any local community of these tribes in the territory described in section 1 of this Act. Each tribal community shall prepare a roll of its tribal membership, which roll shall be submitted to a Tlingit and Haida central council for its approval. The said central council shall prepare a combined roll of all communities and submit it to the Secretary of the Interior for approval. Approval of the roll by the said Secretary of the Interior shall operate as final proof of the right of such Indian communities to share in the benefits of this Act as set forth in section 8."

After the passage of the Act, the Indians concerned filed and prosecuted an action in the Court of Claims based on their claims against the United States. That court gave judgment for the Indian plaintiffs on the issue of the Government's liability [1] and provided by order of February 29, 1956, that the amount of recovery, the amount of offset and the issue of voluntary abandonment were reserved for further proceedings.[2]

In paragraph V of the complaint filed in the state superior court on October 21, 1963, the plaintiff states that

"In an effort to organize a central council described in section 7 of the Act of June 19, 1935, such a council exists in a de facto sense purporting to represent the Tlingit and Haida Indians and receiving a de facto recognition by the Bureau of Indian Affairs, Department of the Interior, in the planning and management of the fund which will ensue on the final conclusion of said action in the Court of Claims."

The plaintiff then alleges in succeeding paragraphs of the complaint (1) that the central council is elected by a convention of delegates from the respective tribal communities to be called for November 8, 1963, at Wrangell, Alaska; (2) that the several defendants misrepresented themselves to be members of the Stikine Tribal Community whereas in fact they belong to other tribes of the Tlingit and Haida Indians; and (3) that on such misrepresentation they were illegally elected delegates to represent a tribe of which they were not members.[3]

The superior court being of the opinion that it had no jurisdiction to hear and determine the issues for the reason that the subject matter of the plaintiff's action was within the exclusive jurisdiction and control of the United States, denied the order to show cause and ordered the complaint to be dismissed as a matter of law. It is from this final order or judgment that the plaintiff has appealed.

In a memorandum opinion accompanying the order of dismissal, the trial judge concluded:

"As previously stated, the Tlingit and Haida Act of June 19, 1935 is a special jurisdictional act conferring upon the United States Court of Claims and that court only, the right to hear and determine the claims and issues involved. The jurisdiction conferred in my opinion is exclusive and includes the regulation, supervision and control of the organization of central council mentioned in Section 7 of the jurisdictional act by the Court of Claims or the authorized agency of the United States delegated this authority by Congress. The fact that the defendants are citizens and residents of the State of Alaska and generally subject to the jurisdiction of the Superior Court of this State

---

1. Tlingit & Haida Indians v. United States, 177 F.Supp. 452 (Ct.Cl.1959).

2. Id. at 468–69.

3. It appears that the defendants have never been served with notice of these proceedings either below or on appeal, so we do not regard them as parties over whom this court presently has any jurisdiction.

does not of itself give this court jurisdiction to hear and determine issues herein."

We are of the opinion that the court was wrong in holding as it did. The general statute defining the jurisdiction of the Court of Claims declares in part:

"The Court of Claims *shall have jurisdiction to render judgment upon any claim* against the United States founded * * * upon * * * any Act of Congress * * *.[4]" [Emphasis supplied.]

The second section of the special jurisdictional statute under which this action was brought provides specifically that

"*All claims* * * * which the said Tlingit and Haida Indians of Alaska may have, or claim to have, against the United States, for lands or other tribal or community property rights, taken from them by the United States without compensation therefor * * * *shall be submitted to the said Court of Claims* * * * for the settlement and determination of the equitable and just value thereof * * * and *jurisdiction is hereby conferred upon said Court to hear such claims and to render judgment and decree thereon for such sum as said court shall find to be equitable and just* for the reasonable value of their said property * * *.[5]" [Emphasis supplied.]

It is apparent from the language of these two statutes that the Court of Claims has jurisdiction to hear and determine the claims of the Tlingit and Haida Indians of Alaska against the United States and to render judgment thereon. We assume that this particular phase of the jurisdiction is exclusive in the absence of any claim or showing that some other court has concurrent jurisdiction. However, we do not construe the statutes as giving the Court of Claims exclusive jurisdiction to decide the collateral issue of what persons are qualified to represent the plaintiff and his class in the selection of a central council to approve the rolls of tribal membership as set out in section 7 of the Act of June 19, 1935, supra, and to act in the planning and management of any amounts recovered by the Indians from the United States in the final judgment to be entered in their action in the Court of Claims.

In our opinion the exercise of jurisdiction by the state court on the collateral issue mentioned would not offend against the express provision of the Act of June 19, 1935, that the Court of Claims shall have the right to hear and determine the claims of the Indians against the Government and render judgment thereon. Ours is not a novel concept in the law. For example, in copyright and patent infringement cases the United States District Court has exclusive jurisdiction,[6] yet the Supreme Court of the United States has held that a state court has concurrent jurisdiction to try questions of title, and may construe and enforce contracts relating, to patents.[7]

In Charles Dowd Box Co. v. Courtney[8] the Supreme Court had up for consideration the question of whether section 301(a) of the Labor Management Relations Act conferring jurisdiction on federal district courts in actions for the violation of contracts between an employer and labor organizations divested state courts of jurisdiction to enforce rights created by the statute. Said the Court:

"This Court's approach to the question of whether Congress has ousted state

---

4. 28 U.S.C.A. § 1491 (1950), 62 Stat. 940 (1948), as amended by 28 U.S.C.A. § 1491 (1963 Supp.), 67 Stat. 226 (1953), 68 Stat. 1241 (1954).

5. Act of June 19, 1935, 49 Stat. 388.

6. Cinema Patents Co. v. Columbia Pictures Corp., 62 F.2d 310, 312–13 (9th Cir. 1932).

7. New Marshall Engine Co. v. Marshall Engine Co., 223 U.S. 473, 32 S.Ct. 238, 56 L.Ed. 513 (1912).

8. 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).

courts of jurisdiction was enunciated by Mr. Justice Bradley in Claflin v. Houseman, 93 U.S. 130, 23 L.Ed. 833, and has remained unmodified through the years. 'The general question, whether State courts can exercise concurrent jurisdiction with the Federal courts in cases arising under the Constitution, laws, and treaties of the United States, has been elaborately discussed, both on the bench and in published treatises * * * [and] the result of these discussions has, in our judgment, been * * * to affirm the jurisdiction, where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case.' 93 U.S., at 136. See Robb v. Connolly, 111 U.S. 624, 4 S.Ct. 544, 28 L.Ed. 542; Second Employers' Liability Cases (Mondou v. New York, N. H. & H. R. Co.) 223 U.S. 1, 56–59, 32 S.Ct. 169, 177–178, 56 L.Ed. 327; [348–350] [38 LRA NS 44, 1 NCCA 875] State of Missouri ex rel. St. Louis, B. & M. R. Co. v. Taylor, 266 U.S. 200, 45 S.Ct. 47, 69 L.Ed. 247; [42 A.L.R. 1232] Garrett v. Moore-McCormack Co., 317 U.S. 239, 245, 63 S. Ct. 246, 250, 87 L.Ed. 239; [243] Brown v. Gerdes, 321 U.S. 178, 188, 64 S.Ct. 487, 492, 88 L.Ed. 659 [661, 665]

(concurring opinion). To hold that § 301(a) operates to deprive the state courts of a substantial segment of their established jurisdiction over contract actions would thus be to disregard this consistent history of hospitable acceptance of concurrent jurisdiction." [9]

To conclude, we cannot perceive in the Act of June 19, 1935, any intent upon the part of Congress to confide exclusive jurisdiction in the Court of Claims to interpret and apply the rules laid down in sections 7 and 8 [10] of the Act.

■ In his brief on appeal the plaintiff alleges and charges as additional error that the trial court wrongfully forbade the clerk to issue a summons without notice to the plaintiff. We agree, for under the facts and circumstances of this case it was highly irregular for the trial court to forbid the clerk to issue the summons. We will not countenance such practice.

The order or judgment of the superior court refusing to grant the plaintiff's request for an order to show cause and dismissing the complaint is reversed and set aside and the case is remanded to the lower court with directions to proceed in conformity with this opinion.

Reversed.

9. Id. at 508, 82 S.Ct. at 523, 7 L.Ed.2d at 487–88.

10. Section 8 of the Act of June 19, 1935, reads as follows:

"The amount of any judgment in favor of said Tlingit and Haida Indians of Alaska, after payment of attorneys fees, shall be apportioned to the different Tlingit and Haida communities listed in the roll provided for in section 7 in direct proportion to the number of names on each roll, and shall become an asset thereof, and shall be deposited in the Treasury of the United States to the credit of each community, and such funds shall bear interest at the rate of 4 per centum per annum, and shall be expended from time to time upon requisition by the said communities by and with advice and consent of the Secretary of the Interior, and under regulations as he may prescribe, for the future economic security and stability of said Indian groups, through the acquisition or creation of productive economic instruments and resources of public benefit to such Indian communities: *Provided, however*, That the interest on such funds may be used for beneficial purposes such as the relief of distress, emergency relief and health: *Provided further*, That none of the funds above indicated or the interest thereon shall ever be used for per capita payments." [Emphasis in the original.]